EVANS et al., Appellants,

v.

SMITH et al., Appellees.

[Cite as *Evans v. Smith* (1994), 97 Ohio App.3d 59.]

Court of Appeals of Ohio,
Hamilton County.

No. C–930443.

Decided Sept. 14, 1994.

*Namanworth & Bohlen Co., L.P.A.,* and *Eli Namanworth,* for appellants.

*Rendigs, Fry, Kiely & Dennis* and *Lawrence E. Barbiere; Hardin & Hill* and *Donald E. Hardin,* for appellees.

*Per Curiam.*

The plaintiffs-appellants, Michael Evans ("Evans") and Debbie Evans, appeal from the trial court's order granting summary judgment in favor of the defendants-appellees on the plaintiffs' claims for civil rights violations under Section 1983, Title 42, U.S.Code ("Section 1983"), and for malicious prosecution, false arrest and false imprisonment. The assignment of error, challenging the trial court's order, contends that the evidentiary material in the record demonstrates the existence of fact-dependent issues inherent in the elements of malice and probable cause essential to their claims. We agree in all but one respect.

On January 11, 1991, defendant-appellee Donald Smith ("Smith"), a city of Cincinnati police officer employed as a security guard at a grocery store owned and operated by defendant-appellee Kroger Company, Inc. ("Kroger"), arrested Evans and charged him with the theft of a bottle of wine from Kroger in violation of R.C. 2913.02(A)(1). On January 30, the Hamilton County Municipal Court reduced the theft charge from a third-degree felony to a misdemeanor. Upon the prosecution's request, the court dismissed the reduced charge, and at the prosecution's urging, Smith refiled the charge as a felony. On February 8, at the preliminary hearing on the refiled charge, the court again reduced the charge to misdemeanor theft. The charge was tried to the court on May 15, and at the close of the state's case, the trial court granted Evans's Crim.R. 29 motion for acquittal.

Evans's acquittal prompted the filing of a civil action in January 1992 by Evans and his wife, Debbie Evans, against Smith and Kroger, seeking damages under Section 1983 for alleged civil rights deprivations and under the common-law theories of malicious prosecution, false arrest and false imprisonment. Following discovery, the trial court entered summary judgment for Smith and Kroger on all claims presented in the complaint. From that judgment, the plaintiffs have taken this appeal in which they advance a single assignment of error challenging the

entry of summary judgment for the defendants. We find this challenge to be well taken in part.

Civ.R. 56 provides that a party against whom a claim is asserted may move, with or without supporting affidavits, for summary judgment in his favor on all or any part of the claim. Civ.R. 56(A). A motion for summary judgment may be granted if the court, upon viewing the inferences to be drawn from the underlying facts set forth in the pleadings, depositions, answers to interrogatories, written admissions, and affidavits in a light most favorable to the party opposing the motion, determines (1) that no genuine issue of material fact remains to be litigated, (2) that the moving party is entitled to judgment as a matter of law, and (3) that the evidence demonstrates that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party opposing the motion. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 4 O.O.3d 466, 364 N.E.2d 267; Civ.R. 56(C).

In the proceedings below, the parties presented in the form of deposition testimony vastly different versions of the events surrounding Evans's detention and arrest. Evans testified that he entered the Kroger store on January 11, 1991, to purchase pork chops and stuffing for dinner and a bottle of wine for immediate consumption with his friends. After he had selected the three items, Evans reconsidered his purchases. He returned the pork chops and stuffing to their respective departments and placed the wine on a shelf in the vicinity of the wine rack. As Evans walked through the checkout area toward the store entrance, Smith stopped him and demanded that he surrender the wine hidden under his coat. Evans responded that he had returned the wine to the rack. When Evans persisted in maintaining his innocence in the face of Smith's accusations of lying and threats of arrest, Smith threw Evans against the wall, frisked him and handcuffed him. Despite a store employee's confirmation of Evans's statement that he had returned the wine to the shelf, Smith took Evans to the manager's office and detained him there for close to two hours.

In the course of Evans's detention, Smith learned and advised Evans that police records showed an alleged probation violation. In response, Evans displayed a citation charging him with the probation violation. Smith also asked Evans if he knew a woman named Michelle Evans and related to Evans an incident in which he had scuffled with a male companion of Michelle Evans, who bore a physical resemblance to Evans. Evans admitted that he knew of Michelle Evans, but denied any personal acquaintance with her. Despite Evans's denial, Smith offered to take no action on the probation violation or the alleged theft in exchange for Evans's cooperation with respect to Michelle Evans. Because he had already received a citation for the probation violation and perceived himself invulnerable to a theft charge, Evans dismissed Smith's offer. Ultimately, two

uniformed police officers arrived and escorted Evans to the Hamilton County Justice Center, where he was processed and incarcerated.

In marked contrast to the version of events presented by Evans is that presented by Smith. Smith testified in his deposition that, on the day in question, he was clad in the uniform of a city of Cincinnati police officer and "working as a police officer," yet was present at the Kroger store in his capacity as a paid security guard for Kroger. Smith stated that, from a concealed security area, he observed Evans from the rear as he removed a bottle of wine from the wine rack, proceeded to the next aisle, glanced over his shoulder, "took the bottle of wine and [made] a motion in the front of his clothing * * * [, and when h]is hands came away, * * * he had nothing in his hands." Smith continued to observe Evans as he proceeded "down the aisle almost to the end * * *[,] stopped there, * * * turned to his right * * * [, allowing Smith to view] his right side * * *[, and] mov[ed] his head [from] side to side [while] looking down at himself."

As Evans proceeded across the back of the store, Smith moved from the security area to the front of the store. Coincidently, a uniformed on-duty police officer entered the store just as Evans emerged at the front of the store from the aisle opposite the store entrance and proceeded to a point past the first checkout lane. Evans abruptly turned and retraced his steps, and Smith positioned himself to observe Evans, again from the rear, "as he walked down the aisle * * *[,] put his hands to his front, came back out with a bottle of wine [which] appeared to be the same bottle of wine that [Smith had seen Evans] conceal[,] * * * took the bottle of wine and put it either under his coat or under his arm." Evans then turned as if to proceed across the back of the store, and Smith· returned to the front of the store.

There, in the presence of the on-duty police officer, Smith intercepted Evans as he attempted to make his way toward the exit, asked Evans for identification, and conducted a patdown search for weapons. At Smith's request, a Kroger dairy clerk retrieved a bottle of wine from the opposite end of the aisle in which the wine was displayed and carried it to the front of the store. Smith then arrested Evans for theft, and Evans was placed in handcuffs. Smith and the on-duty officer escorted Evans to the manager's office, where the on-duty officer completed an Arrest and Investigation Report based upon information supplied by Smith and Smith completed a City of Cincinnati Division of Police Offense Report and a Shoplifting Incident Report. Each of these reports reflected Smith's alleged "obs[ervation]" of Evans's "conceal[ment]" of a $3.19 bottle of wine, either "on his person" or "under his coat," and his "attempt to leave the Kroger store [without] paying for same."

Smith, in his deposition, confirmed that Evans's initial detention and arrest was for theft and that sometime thereafter he learned from the on-duty officer that Evans had an "active probation violation." Smith also admitted that, in the course of Evans's interrogation, he asked Evans if he knew Michelle Evans. Smith denied, however, that Evans produced a citation for the probation violation or that he offered Evans a deal in exchange for information about Michelle Evans.

Partial corroboration of Smith's version of the events leading to Evans's arrest was provided by the deposition testimony of the Kroger dairy clerk. The dairy clerk testified that he saw Evans remove a bottle of wine from his coat and place it on the bottom shelf at the opposite end of the aisle in which the wine was displayed. The employee then retrieved the bottle of wine and carried it to Smith at the front of the store, where Smith and the on-duty officer had detained Evans.

▇▇▇ We note at the outset that Kroger's liability for the tortious conduct charged in the state common-law claims advanced in the complaint is derivative and turns upon the issue of whether Smith was acting as a Kroger employee or as a police officer when he arrested and detained Evans. If Smith was acting solely as a police officer, there are no circumstances under which Kroger may be held vicariously liable for his conduct. If Smith was acting as a Kroger employee, the general rule obtains, and Kroger, as Smith's employer, may be held liable under the doctrine of respondeat superior for even the intentional or willful conduct of Smith if his conduct was within the scope of his employment as a store security guard and was calculated to facilitate or to promote the business for which he was employed. See *Osborne v. Lyles* (1992), 63 Ohio St.3d 326, 587 N.E.2d 825; *Byrd v. Faber* (1991), 57 Ohio St.3d 56, 565 N.E.2d 584. If Smith was acting in the dual capacity of Kroger employee and police officer when he arrested and detained Evans, Kroger may be held vicariously liable for the tortious conduct of Smith if Smith was acting outside the public duties of a police officer and if his conduct was within the scope of his employment by Kroger and solely for the benefit of Kroger or was otherwise authorized or ratified by Kroger. See *State v. McDaniel* (1975), 44 Ohio App.2d 163, 174, 73 O.O.2d 189, 195, 337 N.E.2d 173, 180 (citing *Pennsylvania RR. Co. v. Deal* [1927], 116 Ohio St. 408, 156 N.E. 502); accord *Nahra v. The Coliseum* (July 14, 1993), Summit App. No. 15854, unreported, 1993 WL 261582 (citing *Darden v. Louisville & Nashville RR.* [1960], 171 Ohio St. 63, 12 O.O.2d 82, 167 N.E.2d 765, and *Deal, supra* ).

▇▇▇ As we noted *supra*, Smith testified in his deposition that, when he arrested and detained Evans, he was dressed as a city of Cincinnati police officer and "working as a police officer," yet was present at the Kroger store in his capacity as a paid security guard for Kroger. His authority to arrest and detain

Evans without a warrant may, therefore, be said to arise under either R.C. 2935.03(B)(1), which empowers a municipal police officer to effectuate a warrantless arrest, or R.C. 2935.041(A) and (E), which authorize a mercantile establishment or its employee to detain, and a peace officer to arrest, a shoplifter.[1] The evidence presented below relevant to the capacity in which Smith was acting is inconclusive, leaving for resolution at trial genuine issues of fact, material to the pivotal issue of Kroger's vicarious liability. Therefore, the record before us will not support summary disposition of Evans's common-law tort claims against Kroger based upon the issue of vicarious liability.

Turning to the issues presented by the sole assignment of error advanced on appeal, we address first the challenge to the entry of summary judgment for the defendants on the plaintiffs' malicious prosecution claim and find it to be well taken. The tort of malicious criminal prosecution provides redress for the harm to a plaintiff's dignity and reputation occasioned by the misuse of criminal proceedings. *Criss v. Springfield Twp.* (1990), 56 Ohio St.3d 82, 84, 564 N.E.2d 440, 443; *Trussell v. Gen. Motors Corp.* (1990), 53 Ohio St.3d 142, 144–145, 559 N.E.2d 732, 734–736. To sustain an action for malicious criminal prosecution, the plaintiff must plead and prove by a preponderance of the evidence (1) malice in the institution or continuation of the prosecution, (2) a

---

1. R.C. 2935.03(B)(1) authorizes a municipal police officer to effectuate a warrantless arrest as follows:

"When there is reasonable ground to believe that * * * a theft offense as defined in section 2913.01 of the Revised Code * * * has been committed within the limits of the political subdivision * * * in which the peace officer is * * * employed, * * * a * * * municipal police officer * * * may arrest and detain until a warrant can be obtained any person whom he has reasonable cause to believe is guilty of the violation."

R.C. 2935.041, which prescribes the manner in which a mercantile establishment may detain a shoplifter and a peace officer may then make an arrest, provides in relevant part:

"(A) A merchant, or his employee or agent, who has probable cause to believe that items offered for sale by a mercantile establishment have been unlawfully taken by a person, may, · for the purposes set forth in division (C) of this section, detain the person in a reasonable manner for a reasonable length of time within the mercantile establishment or its immediate vicinity.

"* * *

"(C) * * * a merchant or his employee or agent pursuant to division (A) of this section may detain another person for any of the following purposes:

"(1) To recover the property that is the subject of the unlawful taking * * *;

"(2) To cause an arrest to be made by a peace officer;

"(3) To obtain a warrant of arrest.

"(D) * * * the merchant or his employee or agent acting under division (A) * * * of this section shall not search the person, search or seize any property belonging to the person detained without the person's consent, or use undue restraint upon the person detained.

"(E) Any peace officer may arrest without a warrant any person * * * that he has probable cause to believe has committed an unlawful taking in a mercantile establishment. An arrest under this division shall be made within a reasonable time after the commission of the act or unlawful taking."

lack of probable cause for undertaking the prosecution, and (3) the termination of the prosecution in favor of the accused. *Trussell, supra,* syllabus.

Evans's prosecution for theft was terminated, following a trial on the merits, in his favor. Smith and Kroger assert, however, that summary judgment was properly entered in their favor on the plaintiffs' malicious prosecution claim when no issues of fact remain as to whether Evans's prosecution was instituted or continued with malice or without probable cause. We are unpersuaded.

The Ohio Supreme Court has defined "malice" for purposes of a claim of malicious criminal prosecution as "an improper purpose, or any purpose other than the legitimate interest of bringing an offender to justice." *Criss, supra,* 56 Ohio St.3d at 85, 564 N.E.2d at 443. In determining whether a criminal prosecution was instituted or continued for an improper purpose, inquiry must be made into the basis for the decision to prosecute. In the absence of evidence showing a basis for the decision, it will appear to have been made without any basis, *i.e.,* maliciously. *Id.* at 85, 564 N.E.2d at 443. Thus, the absence of probable cause is the gist of an action for malicious prosecution, and malice may be inferred from the absence of probable cause. *Melanowski v. Judy* (1921), 102 Ohio St. 153, 131 N.E. 360, paragraph one of the syllabus.

The determination of whether a criminal prosecution was undertaken in the absence of probable cause entails an inquiry into the "facts and circumstances * * * actually known to or reasonably within the contemplation of the defendant at the time of the instigation of criminal proceedings." *McFinley v. Bethesda Oak Hosp.* (1992), 79 Ohio App.3d 613, 616–617, 607 N.E.2d 936, 939 (citing *Melanowski, supra,* paragraph two of the syllabus). For purposes of a claim of malicious prosecution, a criminal prosecution was undertaken without probable cause if the defendant instituted or continued the prosecution without "[a] reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused [was] guilty of the offense with which he [was] charged * * *." *Ash v. Marlow* (1851), 20 Ohio 119, paragraph one of the syllabus; accord *Huber v. O'Neill* (1981), 66 Ohio St.2d 28, 30, 20 O.O.3d 17, 19, 419 N.E.2d 10, 12; see, also, *McFinley, supra,* 79 Ohio App.3d at 617, 607 N.E.2d at 939.

Applying the standard set forth in *Ash, supra,* to the evidence presented in the proceedings below, we find the version of the events surrounding Evans's detention and arrest presented in the depositions of Smith and the Kroger dairy clerk supportive of a determination that Evans's theft prosecution was undertaken with probable cause. However, Evans's version of the events surrounding his arrest supports a determination that the prosecution was undertaken and pursued in the absence of probable cause and thus gives rise, inferentially, to a

finding of malice. We further discern in Evans's testimony to his colloquy with Smith regarding Michelle Evans evidentiary support for a finding of malice, independent of the inference of malice that arises from the institution and continuation of the prosecution without probable cause.

The issue of probable cause, which is ordinarily one of fact to be resolved at trial, may be determined as a matter of law upon a record that allows for only one reasonable conclusion. *McFinley, supra,* 79 Ohio App.3d at 617, 607 N.E.2d at 939 (citing *Huber, supra* ). However, when, as here, the resolution of the issue of probable cause (and, by inference, the issue of malice) depends on whether the trier of fact believes the plaintiff or the defendant, summary disposition of a malicious prosecution claim is inappropriate. See *Trussell, supra,* 53 Ohio St.3d at 146, 559 N.E.2d at 736 (holding that a directed verdict on plaintiff's malicious prosecution claim was inappropriate when resolution of the probable-cause issue depended on whether the trier of fact believed plaintiff or defendant). We, therefore, hold that the trial court erred in granting summary judgment for the defendants on the plaintiffs' malicious prosecution claim.

Our determination with respect to the plaintiffs' malicious prosecution claim that an issue of fact remains as to whether Evans's theft prosecution was undertaken without probable cause is, under these circumstances, determinative of the challenge presented on appeal to the entry of summary judgment for the defendants on the plaintiffs' false arrest and false imprisonment claims. The Ohio Supreme Court has recognized that an action for malicious prosecution is "closely akin" to an action for false arrest or false imprisonment, but has characterized "the distinction between them [as] fundamental." *Rogers v. Barbera* (1960), 170 Ohio St. 241, 243–244, 10 O.O.2d 248, 249, 164 N.E.2d 162, 164. In an action for malicious prosecution, "valid process justifies [the] restraint or imprisonment, and the gist of the cause of action is malice or evil intent." In an action for false arrest or false imprisonment, "the plaintiff [is deprived] of his liberty without lawful justification; and the good intention of the defendant does not excuse, nor does his evil intention create, the tort." Thus, a " 'suit for false arrest or false imprisonment is the proper action where the aggrieved party is arrested without legal process, or under a void process; but where the process on which the arrest is made is regular on its face, but is sued out maliciously and without probable cause, the remedy is an action for malicious prosecution.' " (Emphasis deleted.) *Rogers, supra,* at 243–244, 10 O.O.2d at 249, 164 N.E.2d at 164, quoting 22 American Jurisprudence (1939) 353, False Imprisonment, at Sections 2 and 3; see, also, *McFinley, supra,* 79 Ohio App.3d at 619, 607 N.E.2d at 941.

A distinction also lies between the torts of false arrest and false imprisonment with respect to the manner in which each claim arises:

"In a false arrest, false imprisonment exists, but the detention is by reason of an asserted legal authority to enforce the processes of the law; in a false imprisonment, the detention is purely a matter between private persons for a private end, and there is no intention of bringing the person detained before a court, or of otherwise securing the administration of the law." *Rogers, supra,* 170 Ohio St. at 243, 10 O.O.2d at 249, 164 N.E.2d at 164.

Smith's arrest of Evans could be effectuated only pursuant to the authority conferred upon a police officer under R.C. 2935.03(B)(1) and 2935.041(E). However, R.C. 2935.041(A) conferred upon Smith the authority, and the colloquy regarding Michelle Evans suggests a motive, for a "purely * * * private" detention. Thus, while Evans's arrest and detention may be perceived as an exercise of Smith's "asserted legal authority to enforce the processes of the law," the record also provides the basis for the perception that the detention accompanying Evans's arrest was "purely a matter between private persons for a private end, [with] no intention of * * * securing the administration of the law." Accordingly, Evans's claim may properly be asserted as a claim for false arrest or for false imprisonment.

■ In its essential elements, a claim for false arrest is indistinguishable from a claim for false imprisonment in that each claim requires proof that one was intentionally confined within a limited area, for any appreciable time, against his will and without lawful justification. *Feliciano v. Kreiger* (1977), 50 Ohio St.2d 69, 4 O.O.3d 158, 362 N.E.2d 646; accord *Bennett v. Ohio Dept. of Rehab. & Corr.* (1991), 60 Ohio St.3d 107, 573 N.E.2d 633; *Thyen v. McKee* (1990), 66 Ohio App.3d 313, 584 N.E.2d 23.

■ In *McFinley, supra,* we acknowledged that the concept of lawful justification to support a detention or confinement for purposes of a false arrest or false imprisonment claim is "not * * * fully synonymous" with the concept of probable cause for purposes of a malicious criminal prosecution claim. *Id.,* 79 Ohio App.3d at 616, 607 N.E.2d at 939. In this instance, however, Smith's deposition testimony casts him, varyingly, in the role of municipal police officer and/or Kroger security guard when he arrested and detained Evans, and, as such, his authority to arrest and detain Evans without a warrant may fairly be said to be derived from R.C. 2935.03(B)(1), which empowers a municipal police officer to effectuate an arrest without a warrant if he possesses a "reasonable ground to believe * * * a theft offense * * * has been committed" and "reasonable cause to believe" the arrestee committed the offense, or R.C. 2935.041(A) and (E), which authorize a mercantile establishment to detain, and a peace officer to arrest, one whom they have "probable cause to believe [has taken] items offered for sale by [the] mercantile establishment." When, as here, the authority to arrest and detain an individual without a warrant was derived from a statute requiring a

"reasonable ground," "reasonable cause" or "probable cause" to believe that the arrestee or detainee committed a criminal offense, a determination for purposes of a malicious prosecution claim that the arrest and detention were undertaken without probable cause effectively determines the issue, relevant to a false arrest or false imprisonment claim, of whether that individual was arrested and detained without lawful justification. *McFinley, supra,* 79 Ohio App.3d at 620, 607 N.E.2d at 941.

The evidence before us is uncontroverted that Evans was intentionally confined within a limited area, for an appreciable time and against his will. The conflicting deposition statements of Smith and Evans leave for resolution at trial genuine issues of fact as to whether Evans's arrest and detention were made upon "probable cause" to believe that Evans was guilty of shoplifting or upon a "reasonable ground" to believe a theft offense was committed and "reasonable cause" to believe that Evans was the perpetrator. Thus, there remain to be litigated genuine issues of fact, material to the plaintiffs' false arrest and false imprisonment claims, as to whether Evans's confinement was without lawful justification. Accordingly, we hold that summary judgment was improvidently entered for the defendants on the plaintiffs' false arrest and false imprisonment claims.

The unresolved issue of probable cause also obviates the entry of summary judgment on the plaintiffs' Section 1983 claim against Smith. Section 1983, Title 42, U.S.Code, provides in relevant part:

"Every person who, under color of any statute * * * of any State * * *, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law * * * for redress.  * * *"

To maintain a Section 1983 claim, a plaintiff must "identify a right secured by the United States Constitution and the deprivation of that right by a person acting under color of state law." *Russo v. Cincinnati* (C.A.6, 1992), 953 F.2d 1036 (citing *West v. Atkins* [1988], 487 U.S. 42, 48, 108 S.Ct. 2250, 2255, 101 L.Ed.2d 40, 49); see, also, *1946 St. Clair Corp. v. Cleveland* (1990), 49 Ohio St.3d 33, 34, 550 N.E.2d 456, 459 (holding that a Section 1983 claim requires proof that [1] the conduct in question was committed by one acting under color of state law, and [2] the conduct deprived plaintiff of rights, privileges and immunities secured by the federal constitution or federal law); accord *Shirokey v. Marth* (1992), 63 Ohio St.3d 113, 585 N.E.2d 407.

As we noted *supra,* Smith testified in his deposition that, in his encounter with Evans, he was acting in the capacity of municipal police officer and/or

Kroger security guard. Based upon this testimony, we determined that Smith's authority to detain Evans and to effectuate a warrantless arrest could be said to be derived from R.C. 2935.03(B)(1) or R.C. 2935.041(A) and (E). Regardless of whether Smith was acting as a municipal police officer or as a Kroger security guard or in some hybrid capacity, his authority to arrest and detain Evans was derived from a state statute. Therefore, Smith was acting under color of state law when he arrested and detained Evans.

Smith's warrantless arrest and detention of Evans also implicates a right secured by the federal Constitution. The Fourth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, "requires the [s]tates to provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty." *Baker v. McCollan* (1979), 443 U.S. 137, 142, 99 S.Ct. 2689, 2693–2694, 61 L.Ed.2d 433, 440–441. Therefore, a warrantless arrest made without probable cause constitutes a violation of the Fourth Amendment and may provide the predicate for a Section 1983 claim. *Marx v. Gumbinner* (C.A.11, 1990), 905 F.2d 1503, 1505.

The United States Supreme Court has defined "probable cause" for purposes of the Fourth Amendment in terms substantially similar to those employed by the Ohio Supreme Court to define "probable cause" for purposes of a malicious prosecution claim, requiring "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo* (1979), 443 U.S. 31, 37, 99 S.Ct. 2627, 2632, 61 L.Ed.2d 343, 349–350; accord *Criss v. Kent* (C.A.6, 1988), 867 F.2d 259, 262. As we determined *supra*, the testimony presented in the proceedings below raises a factual issue as to whether Smith arrested and detained Evans without probable cause. Thus, there remains an issue of fact, material to the plaintiffs' Section 1983 claim, as to whether Smith deprived Evans of a right secured by the federal Constitution by effectuating an arrest and detention of Evans in contravention of the Fourth Amendment requirement that a pretrial detention be based on probable cause.

When, as here, the basis for a Section 1983 action is the Fourth Amendment, the distinction between Smith's status as a municipal police officer and his status as a Kroger security guard assumes considerable significance. It is well established that the Fourth Amendment prohibition against unreasonable searches and seizures applies only to the actions of the government and its officers, and not to the actions of private individuals or entities. *Burdeau v. McDowell* (1921), 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048. R.C. 2935.041 does not, for purposes of the Fourth Amendment, operate to confer upon a merchant or its employee the status of a law enforcement officer. *State v. Bolan* (1971), 27

Ohio St.2d 15, 56 O.O.2d 8, 271 N.E.2d 839; *McDaniel, supra;* accord *State v. Edwards* (1976), 50 Ohio App.2d 63, 64–65, 4 O.O.3d 44, 44–45, 361 N.E.2d 1083, 1084–1085. Thus, the plaintiffs' Section 1983 claim may be premised upon an arrest and detention undertaken by Smith in his capacity as a municipal police officer, but not upon a detention undertaken by Smith, pursuant to R.C. 2935.041, as a Kroger employee, and Kroger can under no circumstances be held liable for the conduct giving rise to the plaintiffs' Section 1983 claim. We, therefore, hold that summary judgment was appropriately entered for Kroger, but was improvidently granted for Smith on the plaintiffs' Section 1983 claim.

Having thus determined that Kroger cannot be held vicariously liable for the conduct of Smith charged in the plaintiffs' Fourth–Amendment-based Section 1983 claim, we overrule the plaintiffs' sole assignment of error to the extent of the challenge presented to the entry of summary judgment for Kroger on the plaintiffs' Section 1983 claim and affirm that portion of the judgment entered below. Upon our determination that genuine issues of material fact remain with respect to the balance of the plaintiffs' claims, we sustain the assignment of error to the extent of the challenges advanced therein to the entry of summary judgment for Smith on the Section 1983 claim and to the entry of summary judgment for both defendants on the malicious prosecution, false arrest and false imprisonment claims, reverse the judgment entered below accordingly, and remand for further proceedings consistent with law and this decision.

*Judgment accordingly.*

KLUSMEIER, P.J., GORMAN and M.B. BETTMAN, JJ., concur.