Defendant-appellant, Edward Doczy, appeals from a decision of the Warren County Court of Common Pleas denying his motion for summary judgment in a claim for tortious interference with business relations brought against him by plaintiff-appellee, Two Victor Company. We affirm.
The city of Springboro entered into a lease agreement with appellee concerning a restaurant operation at a city golf facility, Heatherwoode Golf Course. Appellee was a limited liability company owned and operated by Michael Shampton. Shampton had been chosen to conduct food service operations following the failure of two prior restaurants at the golf club location. Shampton and others competing to operate the food services were informed by appellant, Springboro's city manager, that the city anticipated entering into a long-term lease, possibly a fifteen-year term, consisting of successive three-year leases. The city council authorized appellant to enter into a short-term lease leading to a long-term lease with Shampton's company. Appellant was instructed by the council to proceed "expeditiously" toward a long-term lease. The interim lease, which was the only signed agreement of the parties, provided in part as follows:
 11. This Lease may be terminated at any time by either party upon thirty (30) days written notice, without showing of cause. This Lease may be terminated upon seven (7) days written notice by either party upon a material breach of this Agreement.
 12. The parties specifically intend that this Lease Agreement shall continue in effect only until a long-term lease containing more detailed terms and conditions can be negotiated and executed. Therefore, Lessor reserves the right to impose other terms and conditions upon this Lease Agreement as are reasonably necessary for the protection of the property, for the proper maintenance of the building, for the proper provision of food services to patrons, and otherwise to protect the Lessor from costs or expenses associated with the use and operation of the facility.
The lease was signed by Shampton on behalf of appellee and by appellant on behalf of the city of Springboro on May 8, 1995, and Shampton began operations at the golf club. Despite the lease provision indicating that a long-term lease was contemplated, no long term lease was ever signed. Appellant initially told Shampton that the city attorney was working on other matters, but later acknowledged that appellee's long-term lease would be held in abeyance pending changes in the management of the golf club. Appellant assured Shampton that there would be "no problems" and Shampton was also assured that he would have at least three years at the location.
In September 1995, the city issued a request for proposal ("RFP") for golf course professional management services. The RFP stated that "the current food service provider is under a new three-year lease for restaurant, banquet, golfer's grill, and course food service operations." The RFP further provided that "the successful golf course operator will have an opportunity to make a proposal for food service operations after a three-year period."
American Golf Corporation (AGC) was the successful bidder to manage the golf course. AGC proposed that "the City have AGC operate [food service] when it becomes available." In February 1996, an AGC representative acknowledged appellant's "concerns with the restaurant" and promised to inform appellant of any observed problems. Thereafter, AGC's course manager, Chuck Shreve, wrote to appellant to complain of poor service in the restaurant. On February 16, 1996, appellant wrote to Shampton, stating that as the golf course management issue had been resolved it was time to focus on the restaurant lease. Appellant requested that Shampton provide monthly financial reports and expressed concerns regarding cleanliness of the food service operations and progress on furnishing the banquet center.
The signed short-term agreement between the parties had not required financial reports and Shampton expressed unwillingness to provide them. The proposed long-term lease did require monthly statements including, gross receipts, sales tax reports, and a monthly sales profile indicating daily revenues by revenue center (e.g., concessions, banquets, etc.). Discussions between appellant and Shampton continued. Appellant proposed that Shampton enter a management contract situation rather than a lease, and that AGC should manage the contract. Shampton and appellant and Shreve had at least one conversation where this possibility was discussed. Shampton taped some conversations without the knowledge of appellant or Shreve.
On October 25, 1996, appellant wrote to Shampton noting that there were two alternatives: 1) sever the relationship (appellant acknowledged that Shampton should receive fair value for his investments adjusted for the period of his use) or 2) enter into a management agreement under which AGC would act as Shampton's direct supervisor. By this letter, appellant terminated the city's short-term lease with appellee as of December 31, 1996.
On November 4, 1996, Shampton replied that he was not interested in continuing his operation under AGC's supervision. On November 1, 1996, AGC presented a proposal for management of food and beverage services at Heatherwoode. This proposal with some modifications, which included payment of management fees rather than a lease, was later accepted by the city.
On January 17, 1997, Shampton and appellee (Two Victor Company) filed suit against the city of Springboro, appellant (Edward Doczy), certain members of the Springboro City Council, AGC, and Chuck Shreve. The suit alleged five causes of action: tortious interference with a business relationship, fraudulent misrepresentation, negligent misrepresentation, breach of contract, and quantum meruit. The city of Springboro filed a counterclaim. On August 14, 1997, the trial court dismissed all claims against the members of the city council. In October 1997, all remaining defendants filed motions for summary judgment. On January 26, 1998, the trial court issued a decision and entry without factual recitations or analysis of the law. The trial court considered the pleadings, the affidavits and depositions filed within the context of the motion, and the written and oral arguments of counsel. All claims for and against Shampton were dismissed by the trial court. The court also dismissed appellee's claim against the city of Springboro for tortious interference with a business relationship and a breach of contract claim against appellant.
Appellant brought this appeal challenging the court's denial of his assertion of statutory immunity with respect to appellee's claim of tortious interference with a business relationship. Appellant has raised three assignments of error:
Assignment of Error No. 1:
 THE TRIAL COURT ERRED IN DENYING STATUTORY IMMUNITY TO CITY MANAGER EDWARD DOCZY, WHEN ITS DECISION WAS BASED ON "EVIDENCE' CONSISTING OF TRANSCRIPTS OF ILLEGALLY-OBTAINED AUDIO TAPES.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED IN DENYING STATUTORY IMMUNITY TO CITY MANAGER EDWARD DOCZY, WHEN ITS DECISION WAS BASED ON INADMISSIBLE AND UNAUTHENTICATED EVIDENCE.
Assignment of Error No. 3:
 THE TRIAL COURT ERRED IN DENYING STATUTORY IMMUNITY TO CITY MANAGER EDWARD DOCZY WHEN APPELLEE FAILED TO CARRY ITS BURDEN OF PROVING THAT THE CITY MANAGER WAS NOT ENTITLED TO STATUTORY IMMUNITY.
We will address the third assignment of error first. Although this litigation is complex, the issue before us is a narrow one. Ordinarily, of course, a denial of summary judgment is not appealable as a final order. However, effective January 27, 1997, R.C. 2744.02 was amended to add paragraph (C) which states:
 An order that denies a political subdivision or an employee of a political subdivision the benefit of an alleged immunity from liability as provided in Chapter 2744, or any other provision of the law is a final order.
The only issue this court therefore has jurisdiction to consider is whether the trial court erred in denying summary judgment to appellant based on his asserted statutory immunity. The immunity of the city of Springboro is not at issue and neither are the merits of appellee's underlying claim.[1]
On immunity, as on appeal of any summary judgment issue, our review is de novo. Brown v. Scioto Cty. Bd. of Commr. (1993),87 Ohio App.3d 704, 711. Summary judgment is only proper when no genuine issue as to any material fact remains to be litigated, the moving party is entitled to judgment as a matter of law, and it appears from the evidence that reasonable minds can come to but one conclusion and viewing such evidence most strongly in favor of the party against whom the motion is made, that conclusion is adverse to that party. Welco Ind., Inc. v.Applied Cost. (1993), 67 Ohio St.3d 344. Appellant therefore was only entitled to summary judgment if there was no genuine issue of material fact concerning his statutory immunity.
The legislature has enacted a series of provisions dealing with the immunity and exceptions to immunity of political subdivisions and their employees. In R.C. 2744.02(A)(1), the functions of political subdivisions are classified as governmental functions and proprietary functions. The operation and control of a golf course is defined as a governmental function in R.C. 2744.01(C)(2)(u). R.C. 2744.03 provides tort immunity defenses to both political subdivisions and their employees as follows:
 (A) In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to persons or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunity may be asserted to establish nonliability:
* * *
 (6) * * * [T]he employee is immune from liability unless one of the following applies:
 (a) His acts or omissions were manifestly outside the scope of his employment or official responsibilities;
 (b) His acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;
 (c) Liability is expressly imposed upon the employee by a section of the Revised Code.
(Emphasis supplied.)
Subsections (a) and (c) are inapplicable. Appellee raised no colorable claim that appellant was acting outside the scope of his employment. Clearly, the city manager is empowered to negotiate contracts, along with the city attorney. A contract is not binding on the municipality until ratified by the city council; however, the preliminary negotiations leading to the short-term lease were conducted as part of appellant's normal duties. More importantly, the actions or inactions surrounding the anticipated long-term lease were also within appellant's duties as city manager.
Appellee has not asserted that liability is expressly imposed upon appellant by any section of the Revised Code. Thus, the only applicable subdivision is that concerning malicious purpose or bad faith. Employees of a political subdivision are immune from liability for their acts or omissions unless "their acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner[.] R.C. 2744.03(A)(6). Summary judgment is only appropriate where the employee's actions show that "he did not intend to cause any harm * * *, did not breach a known duty through an ulterior motive or ill will, [and] did not have a dishonest purpose." Hackathorn v. Presisse (1995),104 Ohio App.3d 768, 772. A genuine issue of material fact concerning the issue of bad faith or malicious purpose may exist even if the evidence is undisputed. For example, the presence of competing reasonable inferences from undisputed facts presents a genuine issue of material fact whose resolution should be left to the trier of fact. The opposing party is entitled to have the evidence construed most strongly in its favor. Carter v. Webb (June 12, 1985), Jackson App. No. 495, unreported.
Appellee's claim was for tortious interference with a business relationship. The business relationship allegedly interfered with was the long-term relationship with the city of Springboro which appellee clearly anticipated. For immunity to be denied at the summary judgment stage, appellee need only have presented evidence from which an inference of bad faith could be drawn. It is undisputed that appellant delayed negotiations and did not move expeditiously toward completion of the anticipated long-term lease between the city and appellee. Competing inferences can be drawn from this fact, some tending to show legitimate discretion, others tending to show bad faith or malicious purpose. When the inference of malice may depend on whether the trier of fact believes one party or another, summary judgment is not appropriate.Evans v. Smith (1994), 97 Ohio App.3d 59.
Similarly, when an issue depends primarily upon someone's state of mind, such an issue is likely to be inappropriate for determination at the summary judgment stage. See,e.g., Killilea v. Sears, Roebuck Co. (1985), 27 Ohio App.3d 163. The competing inferences go largely to appellant's intent in causing the delay. When intent is at issue, courts should be wary of granting summary judgment. See, e.g., Kabbaz v.Prudential Ins. Co. (1985), 27 Ohio App.3d 254. In the context of a tortious interference action, issues of whether the parties have acted in good or bad faith similarly may turn to a large extent on both disclosed and undisclosed intentions. Here, some of the relevant facts concerning the specific expectations and intentions of the parties are undisputed and some are disputed. Construing all facts and inferences in favor of the nonmoving party as we must, we cannot conclude that the trial court erred in denying summary judgment because there was a genuine issue of material fact concerning appellant's entitlement to immunity under R.C. 2744.02(A)(6)(b). Accordingly, appellant's third assignment of error is overruled.
In light of our resolution of the third assignment of error, appellant's first and second assignments of error are not well-taken at this time. Our jurisdiction has been invoked solely on the issue of appellant's asserted statutory immunity. No other issue in this case is ripe for review. Appellant argues that the transcripts of certain tape recordings submitted by appellee were improperly admitted because the taping itself was illegal and because the transcripts are not the best evidence. Generally, the failure to authenticate a document submitted on summary judgment renders the document void of evidentiary value. See Citizens Ins. Co. v. Burkes
(1978), 56 Ohio App.2d 88. In exercising our independent narrowly focussed review of the record, we did not consider any of the transcript evidence contested by appellee. The trial court's entry did not specify what evidence was relied upon in deciding the immunity issue. Accordingly, appellant cannot demonstrate, nor can this court say, that the lower court actually relied upon or even considered any disputed evidence.
Courts are presumed able to disregard inadmissible evidence. See, e.g., Schriever v. Burkhart (Jan. 21, 1992), Butler App. No. CA91-01-019, unreported. Therefore, as any erroneously admitted evidence would be at most harmless error in this context, we expressly decline to decide the issues presented in appellant's first and second assignments of error.
Judgment affirmed.
WALSH and KERNS, JJ., concur.
Kerns, J., retired, of the Second Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 6(C), Article IV of the Ohio Constitution.
[1] Although any extensive discussion of the underlying claim would be dicta, given our limited jurisdiction, we note that tortious interference with business relations is a fairly recent cause of action (see, e.g., Wolf v. McCullough-HydeMemorial Hospital [1990], 67 Ohio App.3d 349) and that the rugged nature of the business world precludes many such suits. See, e.g., Moses v. The Budd Co. (Dec. 3, 1993), Wood App. No. 92WD041, unreported. The Ohio Supreme Court has held that the related interference with employment cause of action can only be maintained against strangers to the business relationship.Anderson v. Minter (1972), 32 Ohio St.2d 207. Other courts have held that the immunity extends to anyone with a recognizable interest in the subject of the business relationship. See Moses
(collecting cases). See, also, Russell v. City of Northwood
(Feb. 27, 1998), Wood App. No. 97-050, unreported (tortious interference does not lie when the defendant is an agent of the principal and he acts within the scope of his duties).