Judgment Appealed From Is: Affirmed
Please note: we have sua sponte removed this case from the accelerated calendar.
OPINION.
This is a malicious-prosecution and civil-rights case brought by the owner of a business who claimed that he was harassed and wrongfully prosecuted under a village's zoning laws. We must decide if he presented enough evidence to withstand the defendants' motion for summary judgment, which was granted by the trial court. We conclude that he did not for any of his claims and affirm.
 I. Background
Plaintiff-appellant Bruce Hassel owns A to Z Discount Printing Company, which is located in the village of Evendale, Ohio. Beginning in May 1996, Hassel received various warnings from the village that certain vehicles in his company's parking lot were in violation of Evendale's zoning code. The first warning, in May 1996, came after he entered into an agreement that permitted a rent-a-car company to park its cars on his lot. The warning stated that the parked rental cars were in violation of the code. Next, in May 1997, he received a warning that a car and truck parked in his back lot were in violation of the code. Later that month, he received another warning that a vehicle with a "for sale" sign in his lot was improperly parked. In each case, the law that was allegedly violated was section 1250.12(a) of the code, which prohibits "outdoor storage" in the district in which A to Z Discount Printing is located.
Hassel did not agree with the warnings. He felt that it was unfair that the code did not define "outdoor storage," and he did not believe that parking the vehicles in his own lot qualified as such. After receiving the warnings, Hassel corresponded with defendant-appellant Michelle Featherstone, the administrative assistant to Evendale's mayor, to determine exactly what "outdoor storage" meant. But, according to him, he never received a satisfactory answer. Nevertheless, for various reasons, the parked vehicles in each instance were moved either from the lot or from their parked positions, and Hassel was not charged with any violations of the zoning code.
In September 1997, however, Evendale sent Hassel another notice that he was violating section 1250.12(a). This alleged violation involved another car with a "for sale" sign that was parked in Hassel's lot for several days. In this case, Evendale actually cited Hassel for violating the code. The case was heard before the Hamilton County Municipal Court, and the court found Hassel not guilty. In arriving at this judgment, the court looked to another section of Evendale's zoning code, section 1256.02(e). That section prohibits "[o]utdoor storage of any improperly licensed, unlicensed, or inoperable motor vehicles for more than seven days * * *." The court read section 1256.02(e) together with section 1250.12(a) and determined that "outdoor storage" under section 1250.12(a) could be defined by the language of section 1256.02(e). In other words, because the car with the "for sale" sign was not improperly licensed, unlicensed, or inoperable, the court held that Hassel could not be found guilty of violating section 1250.12(a).
Believing that he had been harassed and singled out under the zoning laws — and in view of the finding of not guilty Hassel filed suit against Evendale and Featherstone, who he claimed initiated the prosecution against him. He brought claims for malicious prosecution and claims under Section 1983, Title 42, U.S. Code, for violations of his due-process rights. The trial court held that both Evendale and Featherstone were immune from suit and granted summary judgment in their favor.
Hassel now appeals. In his sole assignment of error, he asserts that the court erred in granting summary judgment. A summary-judgment motion is appropriately granted if the court, viewing the evidence in the light most favorable to the nonmoving party, determines that no genuine issue of material fact remains to be litigated, and that the evidence demonstrates that reasonable minds can only come to a conclusion that is adverse to the party opposing the motion.[1] Appellate review of a lower court's entry of summary judgment is de novo.[2] Here, we hold that there is no genuine issue of material fact concerning any of Hassel's claims.
 II. Malicious-Prosecution Claims
Hassel brought two malicious-prosecution claims: one against Evendale and one against Featherstone. The elements of the tort of malicious prosecution are (1) malice in instituting or continuing a criminal prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused.[3]
We do not specifically address each element because we hold that both Evendale and Featherstone are immune from liability under R.C. Chapter 2744, the Political Subdivision Tort Liability Act.
A. Evendale
Regarding Hassel's malicious-prosecution claim against Evendale, R.C. 2744.02(A)(1) is the relevant section. In civil actions for damages, R.C. 2744.02(A)(1) provides a broad grant of immunity to political subdivisions for "any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." Hassel's claim involves the enforcement of laws, which is a governmental function[4]; thus the claim is covered under R.C. 2744.02(A)(1). Although R.C. 2744.02(A)(1) is subject to certain exceptions, none of those exceptions apply here. Therefore, Evendale is immune.
B. Featherstone
As for the malicious-prosecution claim against Featherstone, the relevant section is R.C. 2744.03(A)(6). That section, which specifically covers immunity for political-subdivision employees, provides, in relevant part, that employees are generally immune from liability unless their acts or omissions "were with malicious purpose, in bad faith, or in a wanton or reckless manner."[5] Hassel initially claims that Featherstone acted maliciously because she initiated the prosecution against him without having probable cause to do so. As a preliminary matter, we note that the record reveals that Featherstone, acting on behalf of Evendale, helped to determine that Hassel was allegedly in violation of section 1250.12(a) of Evendale's zoning code, and that she encouraged Evendale's building commissioner to sign the criminal complaint against Hassel. Under these circumstances, Featherstone may have initiated the prosecution against Hassel — at least a genuine issue of fact exists regarding this issue.[6]
But we reject Hassel's argument that Featherstone initiated the prosecution against him without probable cause, because we hold that Featherstone did have probable cause to bring the prosecution.
The record reveals that Featherstone had the responsibility of responding to complaints from the community or from Evendale's planning commission about alleged violations of Evendale's zoning code. In Hassel's case, Featherstone received various complaints about the vehicles that were parked in Hassel's lot, possibly in violation of section 1250.12(a). To respond to these complaints, Featherstone had to determine whether the vehicles were in "outdoor storage" under section 1250.12(a). Because "outdoor storage" was not specifically defined in the code, Featherstone had to determine what the phrase meant.
The record reveals that Featherstone and Evendale's administration turned to the dictionary to find the general usage of the words "outdoor storage." Regarding parked vehicles, Featherstone determined that the phrase referred to vehicles that were not being driven and that were not being used for business purposes. The record further shows that Featherstone attempted to explain to Hassel her interpretation of the code. In addition to speaking with Hassel on various occasions, she drafted a notice, sent to Hassel in June 1997, that stated that Evendale was using the dictionary definition of "storage." The notice contained attached copies of the dictionary pages that were used to define the term, and according to the definitions, the notice stated that vehicles would be considered in "outdoor storage" if the vehicles were not being used.
Considering her interpretation of section 1250.12(a), Featherstone determined that the vehicles in Hassel's parking lot were improperly parked. In the case of the alleged violation that was the subject of Hassel's trial in municipal court, the record shows that Featherstone investigated and concluded that the car had been parked in Hassel's lot for several days and that it was not being used for any business purposes. Based on her determination, she encouraged Evendale's building commissioner to sign the criminal complaint against Hassel.
We conclude that the steps that Featherstone took in determining that Hassel was in violation of section 1250.12(a) were not so unreasonable as to show malice. Because the words "outdoor storage" were not defined in the zoning code, it was not unreasonable for her to consult a dictionary.[7] And because she concluded that the car had been parked for several days in Hassel's lot, for no business purpose, it was reasonable for her to determine that it was in "outdoor storage." (Featherstone's determination was supported by Evendale's police department, which conducted its own investigation.)
Although the municipal court ultimately arrived at a different definition of "outdoor storage" and found Hassel not guilty, that does not mean that Featherstone did not have probable cause to believe that Hassel was violating the code. That Featherstone's interpretation of the law may have been mistaken is not the central issue. Rather, we must determine if, under the circumstances at the time, Featherstone's interpretation was so unreasonable as to evidence malice and negate probable cause.[8]
We hold that there is no evidence to imply malice on Featherstone's part based on her interpretation of the zoning code. If every misinterpretation of often confusing laws, ordinances, and regulations could raise the issue of malice by officials and police officers, immunity would be an illusion. Such a chilling effect on law enforcement could not have been intended by the legislature. Though perhaps in this case matters could have been handled better on all sides, we cannot hold that the immunity veil can be pierced. There is no genuine issue of fact regarding probable cause. We reject Hassel's initial argument.
Hassel next argues that, even if Featherstone had probable cause, she still acted maliciously, in bad faith, or in a wanton or reckless manner. He claims that Featherstone acted recklessly by admitting that "outdoor storage" was vague and by not giving him a clear interpretation of those words. But the record reveals that Featherstone did attempt to explain her interpretation. While Hassel may not have agreed with her interpretation, that does not mean that she acted recklessly.
And there is no evidence that Featherstone maliciously harassed Hassel with the zoning laws, another argument forwarded by him. According to Hassel, beginning in 1996, Featherstone began a pattern of hostility towards him. Regarding the agreement with the rent-a-car company, Hassel claims that Featherstone threatened to arrest him for violating the code before she even tried to work out a solution with him. Because of Featherstone's threats, Hassel claims, he was forced to break the agreement, thus resulting in lost rent for the use of his parking lot. And regarding other alleged violations, Hassel claims that Featherstone made threats without ever explaining to him what the problem was. He claims that he repeatedly asked her how long he could park his cars on his lot, but that she never answered him. At one point, he claims, she threatened to have the police come onto his lot and mark the cars to make sure that Hassel moved them. At another point, he claims that she threatened to cite him to mayor's court. Also, according to him, she stated at one point, "I'll show you how serious I am * * *[.] [I]f you don't think I have the balls to do something, * * * just wait and see." Finally, he claims that, after his trial, in an attempt to determine why he had been prosecuted, he requested documents from Evendale's planning commission, but that Featherstone had destroyed them.
Accepting Hassel's allegations as true, as we must for summary-judgment purposes, and understanding that there is probably another side to the dispute, we are convinced that the entire matter could have been better managed. It is unfortunate indeed when the criminal law is employed to settle a dispute about the interpretation of zoning regulations. But that does not mean that Featherstone's actions amounted to harassment. As we have already concluded, Featherstone made a reasonable attempt to communicate to Hassel her interpretation of section 1250.12(a). Although she might have threatened Hassel with prosecution, she had probable cause to do so under her interpretation of the law. As for the allegedly destroyed documents, there is no evidence that these documents had been disposed of outside Evendale's usual course of business. In short, there is not enough evidence to reasonably infer that Featherstone acted with malice. A material question of fact does not exist.
Hassel also argues that Featherstone recklessly singled out his business for the alleged violations of the zoning code. He points to photographs of parking lots of other Evendale businesses. The photographs, which were taken on four separate days in October 1998, show vehicles parked in the same spots, presumably because they were not moved. Hassel claims that these photographs reveal that other businesses parked their vehicles in their lots just as he parked his vehicles in his. According to him, these other businesses were not punished under the zoning laws, thus revealing that he was unfairly singled out. But we reject this argument. To begin, Featherstone testified that some businesses besides Hassel's were warned about alleged violations of section 1250.12(a). (Featherstone mentioned that one was a business named Majestic Auto Detailing. She also stated that other businesses were warned, but she could not remember which ones.) More importantly, in each picture, it is unclear what the purposes of the vehicles were. According to Featherstone's interpretation of section 1250.12(a), if the vehicles were used for business purposes, then they would not be in violation of the section even if they were parked overnight. Because there is no evidence that the vehicles were not used for business purposes, we hold that the photographs do not create a genuine issue of fact. Finally, Hassel points to an affidavit signed by Brian Stover, the owner of Majestic Auto Detailing. In the affidavit, Stover stated that he received a warning about a van and a trailer being improperly parked in his lot, and that when he asked Featherstone about the warning, she told him that he had thirty to forty days to move the vehicles. According to Hassel, the affidavit reveals that Featherstone unfairly singled him out because she never gave him an indication of how much time he had to move the vehicles on his lot. But, even if Featherstone had given Stover thirty to forty days to move his vehicles, which Featherstone denies, we conclude that, at most, it would only reveal poor judgment on Featherstone's part. In light of our conclusions regarding the other arguments presented by Hassel, we hold that Stover's affidavit does not create a genuine issue of fact. Even with the affidavit, there is no evidence to reasonably infer that Featherstone's actions rose to the level of malice, bad faith, wantonness, or recklessness. Therefore, under R.C.2744.03(A)(6), we hold that Featherstone is immune from the malicious-prosecution claim against her.
 III. Section 1983 Claims
As for Hassel's Section 1983 claims against Evendale and Featherstone, the Political Subdivision Tort Liability Act does not apply,[9] a point that the trial court did not discuss. Nevertheless, we hold that summary judgment was appropriate. To establish a Section 1983 claim, a plaintiff must show that he or she was deprived of a federally protected right.[10] Here Hassel claims that his substantive-due-process rights were violated. He claims that Evendale's and Featherstone's application of section 1250.12(a) was arbitrary, capricious, and so extreme as to shock the conscience.[11] But, as we have already discussed, Evendale's and Featherstone's interpretation of section 1250.12(a) was reasonable. There is not enough evidence to support a finding that Hassel was treated arbitrarily or capriciously. And the fact that the municipal court arrived at a different interpretation of section 1250.12(a) does not change this conclusion. Thus, summary judgment on Hassel's Section 1983 claims was proper.
Therefore, we reject Hassel's sole assignment and affirm the judgment of the trial court.
Judgment affirmed.
 Hildebrandt, P.J., and Winkler, J., concur.
Please Note:
The court has recorded its own entry on the date of the release of this Opinion.
[1] Civ.R. 56(C).
[2] McKay v. Cutlip (1992), 80 Ohio App.3d 487, 491,609 N.E.2d 1272, 1274.
[3] Trussell v. General Motors Corp. (1990), 53 Ohio St.3d 142,559 N.E.2d 732, syllabus.
[4] See R.C. 2744.01(C)(2)(i).
[5] R.C. 2744.03(A)(6)(b); see, also, Piro v. Franklin Twp.
(1995), 102 Ohio App.3d 130, 139, 656 N.E.2d 1035, 1041 ("`Malice' refers to the willful and intentional design to do injury. `Bad faith' connotes a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud.' `Reckless' conduct refers to an act done with knowledge or reason to know of facts that would lead a reasonable person to believe that the conduct creates an unnecessary risk of physical harm and that this risk is greater than that necessary to make the conduct negligent." [Citations omitted.]).
[6] See Robbins v. Fry (1991), 72 Ohio App.3d 360, 362,594 N.E.2d 700, 701-702 ("[A] citizen who serves only as an informer of criminal activity is not regarded as having instituted the criminal proceedings. The protected status of an informer can be lost, however, when the informer * * * demonstrates a desire, direction, request or pressure for the initiation of criminal proceedings."); Siegel v. O.M. Scott Sons Co. (1943), 73 Ohio App. 347,351, 56 N.E.2d 345, 347 (institution if the party "was the proximate and efficient cause of maliciously putting the law in motion").
[7] See State v. Cravens (1988), 42 Ohio App.3d 69, 72,536 N.E.2d 686, 689 (words in a statute must be taken in their "usual, normal or customary meaning").
[8] See Evans v. Smith (1994), 97 Ohio App.3d 59, 68,646 N.E.2d 217, 223 (Probable cause exists if the defendant has a "reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused [is] guilty of the offense with which he [is] charged." [Citations omitted.]).
[9] See 2744.09(E).
[10] Section 1983, Title 42, U.S. Code.
[11] See Pearson v. Grand Blanc (C.A.6, 1992), 961 F.2d 1211,1217.