[Cite as *State v. Calliens*, 2012-Ohio-703.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 97034**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## WENDY CALLIENS

DEFENDANT-APPELLANT

**JUDGMENT:**
**AFFIRMED**

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-545133

**BEFORE:** Jones, J., Stewart, P.J., and Rocco, J.

**RELEASED AND JOURNALIZED:** February 23, 2012

**ATTORNEY FOR APPELLANT**

Aaron T. Baker
Aaron T. Baker Co., L.P.A.
38109 Euclid Avenue
Willoughby, Ohio 44094


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

BY: Andrew Rogalski
Assistant County Prosecutor
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

LARRY A. JONES, SR., J.:

{¶1} Defendant-appellant, Wendy Calliens, appeals the trial court's judgments denying her motion to suppress and sentencing her to two and one-half years in prison. We affirm.

I. Procedural History and Facts

{¶2} In January 2011, Calliens was charged with grand theft, a fourth degree felony, and possessing criminal tools (a screwdriver), a fifth degree felony. Calliens filed two motions to suppress evidence. Within those motions, she contended that she was "detained without reasonable suspicion" and "arrested without probable cause." After a hearing, the trial court denied the motions. Calliens pled no contest to the charges as indicted, and was sentenced to 18 months on the grand theft and one year on the possessing criminal tools, to be served consecutively.

{¶3} At the suppression hearing, the state presented the testimony of one witness, Anna

Cavender, who testified to the following facts. Cavender was a community service officer for the city of Westlake. She was not a commissioned officer and did not have arrest power. On the evening in question, she was working for Crocker Park, a shopping center in Westlake. Cavender described her work at Crocker Park as a "side job," providing security for the shopping center. Although Cavender was paid by Crocker Park, she wore a Westlake police uniform and drove a Westlake police cruiser.

{¶4} Cavender testified that while patrolling in her cruiser that evening, she heard a broadcast from Crocker Park security that a store in the shopping center, Sephora, a perfume and make-up store, had complained of a shoplifter. The broadcast described the shoplifter as a "black female wearing a long black fur mink coat." Cavender immediately responded to the area where Sephora was located. Moments later, another broadcast stated that the suspected shoplifter was seen getting into a gold-colored Buick by a sub sandwich shop in the shopping center.

{¶5} Cavender testified that she was "right around the corner from there, so [she] spun around immediately," and saw a gold-colored Buick. She pulled up next to the car and activated her rear flashers. Cavender looked into the Buick and saw a woman fitting the description of the radio broadcast. Cavender broadcast over her radio that she was with the suspect. According to Cavender, the time from the first radio dispatch until she approached the Buick was "less than two minutes."

{¶6} Cavender then approached the suspect, Calliens, and asked her if she could talk to her; Calliens was "very pleasant" and got out of her car. Cavender told Calliens that she wanted to talk to her about a shoplifting incident at Sephora. Cavender testified that she saw, in plain view, a bag on the back floor of Calliens's vehicle with "white boxes of perfume" in it.

Cavender also saw a box of Christmas decorations on the back seat. Cavender asked Calliens if she could see the items in the bag, to which Calliens responded that it was just Christmas decorations. Cavender told Calliens that she was not talking about the box of decorations, but the bag on the floor.

{¶7} Calliens opened her car door, "fumbled" around with the decorations and then quickly shut the door. Cavender inquired again about seeing the bag. Calliens then positioned herself so that Cavender could not see in her car, and told Cavender that she did not have anything and she had not shoplifted from Sephora.

{¶8} At that time, Officer Joseph Tolaro of the Westlake police, arrived.[1] When Calliens saw Tolaro, she got back into her car. By this time, a Crocker Park security person was on the scene and another was arriving with an employee from White House Black Market, a clothing store at the shopping center, that had also complained of a shoplifting incident that evening. The White House Black Market employee identified Calliens as the woman who had shoplifted from the store. Additionally, the other Crocker Park security personnel present had viewed the security surveillance tape from Sephora and identified Calliens as the shoplifter.

{¶9} Officer Tolaro approached Calliens's car and attempted to speak with her, but she was talking on her cell phone and not being cooperative with him. Eventually, Calliens got out of her car and attempted to light a cigarette. Officer Tolaro told her that she was under arrest and could not light the cigarette. He cuffed her and Cavender conducted a pat-down search of Calliens. During the search, Cavender felt a "hard bulge" on one of Calliens's legs and asked Calliens what it was. Calliens began to cry and said "that's the clothes." Cavender recovered clothes, which were stuffed inside Calliens's long underwear. Officer Tolaro searched

---

[1]The record indicates that Officer Tolaro was injured in the line of duty and unable to testify at the suppression hearing.

Calliens's car and recovered perfume and a screwdriver from the passenger compartment and numerous clothes with tags from the trunk.

{¶10} Officer Tolaro's report was admitted into evidence. He stated in the report that he was on duty at Crocker Park when he saw a "black female wearing a fur coat, and a black shinny hat enter a gold Buick." Moments later, Officer Tolaro heard a radio broadcast of a complaint of shoplifting from Sephora; the described suspect matched the woman he had just seen. Tolaro responded to where he had just seen the woman. Cavender was already on the scene. Officer Tolaro spoke with the security officers on the scene and Cavender.

{¶11} Officer Tolaro then approached Calliens's car, advised why he was there, and asked for her identification. Calliens gave the officer her driver license, but told him that she did not shoplift anything and he was harassing her. After the White House Black Market employee identified Calliens as the shoplifter, Officer Tolaro told Calliens to exit her vehicle, but she initially refused. Calliens eventually exited the vehicle and Officer Tolaro wrote that the following occurred: "She then attempted to light a cigarette. I advised her to not light it, and to put the lighter and cigarette down. She refused to comply. I grabbed her right wrist, and hand, and took the lighter. At this time, she was placed in handcuffs for obstructing a police officer, and resisting arrest."

{¶12} In his report, Officer Tolaro described his search of Calliens's vehicle and Cavender's pat-down search of Calliens's person. He wrote that after the searches, he advised Calliens of "what was going on" and read the *Miranda* warnings to her. After stating that she understood her rights and was waiving her right to counsel, Calliens told the officer that the items in her trunk, in the passenger compartment of her car, and on her person were stolen. According to Tolaro, the stolen merchandise from White House Black Market was worth $600,

the stolen merchandise from Sephora was worth $1,538.67, and the total worth for all the stolen merchandise was approximately $10,000.

{¶13} In denying Calliens's motion to suppress, the trial court made the following findings: (1) Cavender was not responding to an anonymous tip in investigating the incident, rather, she was responding under the "shopkeeper's privilege"; (2) upon viewing the perfume boxes in plain view, Cavender was justified in detaining Calliens; (3) there was corroborating evidence that Calliens was the shoplifter from White House Black Market; and (4) Calliens was not arrested for attempting to light a cigarette, rather her attempt to do so was the "last act of the obstruction." Calliens now raises the following assignments of error for our review:

[I.] The trial court erred in denying appellant's motion to suppress all evidence, as a result of an illegal stop, arrest, and search based upon information from an anonymous informant.

[II.] The trial court erred in denying appellant's motion to suppress all evidence, as a result of an illegal arrest, lacking probable cause.

[III.] The trial court erred in sentencing appellant to maximum and consecutive sentences prior to engaging in fact-finding required by R.C. 2929.14(C)(4).

## II. Law and Analysis

### A. Motion to Suppress

{¶14} In her first and second assignments of error, Calliens challenges the denial of her motion to suppress. Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. In deciding a motion to suppress, the trial court assumes the role of trier of fact. *Id.* A reviewing court is bound to accept those findings of fact if they are supported by competent, credible evidence. *Id.* But with respect to the trial court's conclusion of law, we apply a de novo standard of review and decide whether the facts satisfy the applicable legal standard. *Id.*, citing

*State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539 (4th Dist.1977).

1.   The Initial Detention by Officer Cavender

**{¶15}** The "shopkeeper's privilege," codified under R.C. 2935.041, and which the trial court found Cavender's actions fell under, provides as follows:

(A) A merchant, or an employee or agent of a merchant, who has probable cause to believe that items offered for sale by a mercantile establishment have been unlawfully taken by a person, may, for the purposes set forth in division (C) of this section, detain the person in a reasonable manner for a reasonable length of time within the mercantile establishment or its immediate vicinity.

* * *

(C) [A] merchant or employee or agent of a merchant pursuant to division (A) of this section may detain another person for any of the following purposes:

(1) To recover the property that is the subject of the unlawful taking, criminal mischief, or theft;

(2) To cause an arrest to be made by a peace officer;

(3) To obtain a warrant of arrest;

(4) To offer the person, if the person is suspected of the unlawful taking, criminal mischief, or theft and notwithstanding any other provision of the Revised Code, an opportunity to complete a pretrial diversion program and to inform the person of the other legal remedies available to the * * * merchant.

**{¶16}** Calliens, citing case law dealing with *police action* in response to anonymous tips, contends that Cavender's "stop" of her was illegal because the officer acted solely on an anonymous tip.   But R.C. 2935.041, which the trial court found applicable here, does not operate to confer on the merchant or its employee the status of a law enforcement officer for the purposes of the Fourth Amendment.   *Evans v. Smith*, 97 Ohio App.3d 59, 72, 646 N.E.2d 217 (1st Dist.1994).   We agree with the trial court that Cavender was not a state actor and that her response to the radio dispatch fell under R.C. 2935.041.

**{¶17}** Specifically, Cavender was a community services officer, not a commissioned

peace officer, and did not have arrest powers. She testified that on the evening of the incident she was working a "side job" for Crocker Park and that her duties consisted of protecting the shopping center's merchants, and were not associated with law enforcement. On this record, R.C. 2935.041, and not the Fourth Amendment, applied to her.

{¶18} The record further establishes that Cavender had probable cause to believe that merchandise from Sephora had been unlawfully taken by Calliens. Cavender testified that she heard a broadcast from Crocker Park security that a "black female wearing a long black fur mink coat" had shoplifted merchandise from the store, and that moments later, she heard another broadcast that the suspect had been seen by a sub sandwich shop getting into a gold-colored Buick. Cavender testified that she was "right around the corner from there, so [she] spun around immediately," and saw a gold-colored Buick. Upon pulling up next to the car and looking in, Cavender saw a woman fitting the description of the suspected shoplifter.

{¶19} Not only did the facts demonstrate that Cavender had probable cause to detain Calliens, they also demonstrate that the detention was in a reasonable manner, for a reasonable length of time, and within the immediate vicinity of the shop. The detention took place within minutes of the initial radio broadcast — Cavender testified that she located the gold-colored Buick within two minutes of the broadcast and her detention only lasted for moments until Officer Tolaro arrived.

{¶20} Calliens attempts to make an issue of the manner of the detention, stating that Cavender "pulled her Westlake Police cruiser alongside Appellant's vehicle in such a way that Appellant was not only not free to leave, but literally unable to leave." Cavender testified at the hearing about the way she approached Calliens. She explained that Calliens's vehicle was parallel parked. To the rear of the vehicle was a cement block. In front of the vehicle were

two other parallel parked vehicles. Thus, Cavender pulled up and parked alongside of Calliens's vehicle. Cavender testified that if the cars in front of Calliens's car had left, Calliens would have been able to drive off. On this record, the detention was not unreasonable. Moreover, the detention by Cavender was not an arrest, as contended by Calliens.

2. The Arrest by Officer Tolaro

{¶21} A valid warrantless arrest is based on probable cause — whether "the facts and circumstances within the officer's knowledge were sufficient to cause a prudent person to believe that the individual had committed or was committing an offense." *State v. Johnson*, 8th Dist. No. 84282, 2005-Ohio-98, 2005 WL 77090, ¶ 13.

{¶22} Calliens insinuates that she was arrested for attempting to light a cigarette and talking on her cell phone. The record demonstrates that Calliens was arrested for shoplifting, however. Cavender testified that by the time Officer Tolaro arrived on the scene, Crocker Park security personnel were there, as well as an employee of White House Black Market, who identified Calliens as the woman who had shoplifted that evening from the store. Moreover, Crocker Park security had viewed the security surveillance tape from Sephora and identified Calliens as the shoplifter. Likewise, in his report, Officer Tolaro stated that prior to approaching Calliens, he spoke with security personnel and Cavender.

{¶23} Cavender testified that Officer Tolaro told Calliens that she was under arrest because "we have a positive ID now that you were the one shoplifting," and could not light her cigarette. Cavender did not testify that Calliens was under arrest for attempting to light her cigarette. Moreover, in his police report, Officer Tolaro stated that he *handcuffed* Calliens because she was obstructing him and resisting arrest.

{¶24} On this record, Officer Tolaro had probable cause to believe that Calliens had

shoplifted from two stores at Crocker Park and, therefore, properly arrested her without a warrant.

**{¶25}** In light of the above, Calliens's first and second assignments of error are overruled.

B.    Maximum, Consecutive Sentences

**{¶26}** For her third assigned error, Calliens contends that the trial court erred in sentencing her to maximum and consecutive sentences without "engaging in the fact-finding required by R.C. 2929.14(C)(4)."

**{¶27}** In *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, the Supreme Court of Ohio articulated a two-step approach for appellate courts in reviewing felony sentences:   "First, they must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law.   If this first prong is satisfied, the trial court's decision shall be reviewed under an abuse-of-discretion standard."   *Id.* at ¶ 4.   The trial court has wide discretion to sentence an offender within the allowable statutory range permitted for a particular degree of offense.   *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, ¶ 100.

**{¶28}** Initially, we note that R.C. 2929.14(C)(4) does not address maximum sentences; rather, it addresses only consecutive sentences. Although the language of the statute does require certain findings before a trial court may impose consecutive sentences, the statute had no applicability here.   In *Foster*, the Ohio Supreme Court declared the requirements imposed by R.C. 2929.14(C)(4) unconstitutional and held that "judicial fact-finding is not required before imposition of consecutive prison terms."   *Id.* at ¶ 99.   Thereafter, in *State v. Hodge*, 128 Ohio St.3d 1, 2010-Ohio-6320, 941 N.E.2d 768, the Ohio Supreme Court reiterated that R.C. 2929.14(C)(4) remained unconstitutional and imposed no fact-finding obligation on Ohio's trial

courts. *Id.* at ¶ 39. The General Assembly, however, recently amended former R.C. 2929.14(E)(4), renumbered R.C. 2929.14(C)(4), and enacted new language requiring fact-finding for consecutive sentences. Am.Sub.H.B. No. 86. This legislation, which had an effective date of September 30, 2011, was not applicable to Calliens, who was sentenced in June 2011.

{¶29} In light of the above, Calliens's sentence was not contrary to law, the first prong under *Kalish*. Calliens does not contend, under the second prong of *Kalish*, that her sentence was an abuse of discretion, and we do not find that it was. The record demonstrates that Calliens has a lengthy criminal history, including convictions in Ohio, Pennsylvania, Virginia, and Illinois. Further, while this case was pending, Calliens was arrested in Avon Lake for shoplifting.[2]

{¶30} On this record, we find no abuse of discretion.

{¶31} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the

---

[2]The trial court noted that the incident was an arrest, not a conviction, and that it would not count the arrest against her.

Rules of Appellate Procedure.

LARRY A. JONES, SR.,   JUDGE

MELODY J. STEWART, P.J., and KENNETH A. ROCCO, J., CONCUR