JOURNAL ENTRY and OPINION
{¶ 1} Appellant John Dawson appeals his convictions for two counts of aggravated robbery, two counts of felonious assault, one count of aggravated burglary, one count of obstruction of justice, and one count of engaging in a pattern of corrupt activity. Dawson assigns six errors for our review.[1]
 {¶ 2} Having reviewed the record and pertinent law, we affirm Dawson's convictions, but reverse and remand his sentence for resentencing. The apposite facts follow.
 {¶ 3} The Cuyahoga County Grand Jury indicted Dawson for offenses arising out of a string of robberies and ensuing violence that occurred on the west side of Cleveland during the first week of February 2004. Dawson was indicted for one count of attempted murder, three counts of aggravated robbery, two counts of felonious assault, three counts of aggravated burglary, one count of obstructing justice, one count of tampering with evidence, and one count of engaging in a pattern of corrupt activity. All of the counts had one and three-year gun specifications attached. The matter proceeded to a jury trial.
 {¶ 4} Dawson was tried jointly with his cousin Rayshawn Ogletree. The evidence presented at trial indicated that Dawson and Ogletree used Greg Reinke to rob various businesses in exchange for crack cocaine; it was noted that Reinke was addicted to crack and a heavy user.
 {¶ 5} Tiaisha Ogletree introduced Reinke to her cousins, Dawson and Ogletree, because Reinke wanted to purchase crack cocaine from them. Tiaisha was dating Reinke at that time. Tiaisha lived with Dawson and his mother in an apartment located at West 73rd and Lorain Avenue. Eventually, Reinke moved in with them.
 {¶ 6} According to Reinke, in order to support his and Tiaisha's three hundred-dollar-a-day crack habit, he shoplifted from various stores and either sold the items for money or gave the items to the crack dealers in exchange for crack. Reinke stated he purchased the bulk of his crack from Dawson, but also purchased from Rayshawn Ogletree.
 {¶ 7} Reinke's habit worsened to the point he was purchasing crack from Dawson and Ogletree on credit because he did not have enough money to support his habit. Desperate for money, on February 3, 2004, Reinke stole a pay phone from the Algoro Society located on Lorain Avenue. Dawson helped him carry the pay phone back to the apartment. After having a difficult time opening the pay phone, Reinke stated he wanted to get some "real money." In response, Dawson, along with a man named John Rowe, went to a house located at West 43rd and Sackett, where Dawson retrieved a 9 mm handgun. Dawson returned to the apartment and gave the gun to Reinke. Reinke left and returned with approximately $500 dollars that he had obtained from robbing the Elbireh Society located at West 77th and Lorain. Reinke split the amount with Dawson, Ogletree, John Rowe, and Tiaisha.
 {¶ 8} Later that same night, Dawson again gave Reinke the gun and instructed him to steal more money. Reinke robbed a man by the name of Frank Schmidt in an alley behind the apartment building. During the robbery, a struggle ensued and Reinke shot Schmidt in the stomach. According to Tiaisha, she and Dawson watched Reinke commit the robbery from their second floor apartment. Reinke gave Dawson the $14 he took from Schmidt. He gave the gun back to Dawson and changed his clothes.
 {¶ 9} The next day, Dawson again gave Reinke the gun to obtain more money. This time Reinke robbed West End Lumber located at West 75th and Lorain Avenue. He split the $700 he obtained from the robbery with John Dawson and Tiaisha. Afterwards, he returned the gun to Dawson.
 {¶ 10} On February 7, 2004, Dawson and Reinke drove around the neighborhood looking for a place to rob. They decided to rob My Friends Deli located at West 116th and Detroit Avenue. Dawson gave Reinke the gun and a black hooded sweatshirt to wear. While Reinke went into the deli, Dawson waited in the car. Reinke was initially scared to do the robbery and stood outside the deli. Dawson approached him and told him, "It's cool. Go ahead." He then gave Reinke an empty potato chip bag to put the money in and a one dollar bill. He told Reinke to go inside and ask for change and then pull out the gun once the cash register was opened. Reinke did as he was told and took $1,200 from the cash register. Reinke split the money with Dawson and gave him the gun back.
 {¶ 11} The next day, Reinke, Ogletree, and Rowe robbed Dimitris Restaurant located at West 110th and Lorain Avenue. This time, Reinke fatally shot a customer who tried to stop the robbery. There was no evidence that Dawson was involved in this robbery. However, Reinke and Tiaisha were arrested later that night, based on neighborhood tips to the police. It was not until May 21, 2004, that Tiaisha implicated Dawson in the robberies. Reinke did not give a statement implicating Dawson until October 2004.
 {¶ 12} In exchange for his testimony, Reinke pled guilty to murder and received a life sentence without the possibility of parole. In exchange for her testimony, Tiaisha pled guilty to two counts of robbery and one count of conspiracy. She received an agreed upon sentence of two years. In exchange for his testimony, John Rowe pled guilty to involuntary manslaughter and two counts of aggravated robbery. He received an agreed upon sentence of three years.
 {¶ 13} Based on the above evidence, the trial court dismissed two of the aggravated burglary counts and the tampering with evidence count. The jury found Dawson not guilty of attempted murder, but guilty of two counts of aggravated robbery, one count of aggravated burglary, two counts of felonious assault, one count of obstructing justice, and, one count of engaging in a pattern of corrupt activity. The trial court sentenced Dawson to a total of 45 years in prison.[2]
 Sufficiency Of The Evidence {¶ 14} In his first and second assigned errors, Dawson contends the evidence was insufficient to convict him of the aggravated robberies or the gun specifications. He argues there was no evidence he aided and abetted Reinke in committing the robberies and no evidence that he knew Dawson was using the gun for committing robberies. We disagree.
 {¶ 15} The standard of review with regard to the sufficiency of evidence is set forth in State v. Bridgeman:[3]
"Pursuant to Criminal Rule 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."[4]
 {¶ 16} Bridgeman must be interpreted in light of the sufficiency test outlined in State v. Jenks,[5] in which the Ohio Supreme Court held:
"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia [1979], 443 U.S. 307,99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)" {¶ 17} Dawson contends there was no evidence he aided or assisted in the robberies, and that he was convicted based on his mere presence. He also contends there was no evidence he was aware the gun was being used to commit robberies. Our review of the record indicates otherwise.
 {¶ 18} Generally, a criminal defendant has aided or abetted an offense if he has supported, assisted, encouraged, cooperated with, advised, or incited another person to commit the offense.[6] "Participation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed."[7]
 {¶ 19} Dawson supplied the gun Reinke used in committing the robberies. Based on Reinke's and Tiaisha Ogletree's testimony, Dawson supplied the gun with the understanding that Reinke would use it to obtain money via robbery. Reinke was indebted to Dawson for drugs he had received on credit. The money from the robbery was used to pay his debt and to purchase more drugs from Dawson.
 {¶ 20} Dawson also drove the get away car for Reinke when he robbed the My Friends Deli restaurant. He not only provided Reinke with the gun, but also a black hooded sweatshirt, an empty potato chip bag in which to place the money, and a one dollar bill to proffer as a guise for change in order to get the employee to open the register. When Reinke resisted committing the robbery, Dawson told him, "It's cool. Go ahead."
 {¶ 21} Therefore, based on this evidence, Dawson was convicted for more than just being present and associating with Reinke and Ogletree. He supplied the weapon, which Reinke used to commit the robbery. He instructed Reinke when to commit the robberies; he helped plan the robbery of the My Friends Deli; he shared in the proceeds from the robberies; and, at the conclusion of each robbery, Reinke returned the gun to him. Accordingly, Dawson's first and second assigned errors are overruled.
 Inconsistent Sentence {¶ 22} In his third and fourth assigned errors, Dawson contends his sentence is inconsistent and disproportional when compared to the sentences of his co-defendants and those of other similarly situated offenders.
 {¶ 23} R.C. 2929.11(B) states:
"(B) A sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing set forth in division (A) of this section, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders."
 {¶ 24} R.C. 2929.11(A) provides that the "overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender."
 {¶ 25} This court has previously recognized that R.C. 2929.11
does not require a trial court to make findings on the record, but rather, it sets forth objectives for sentencing courts to achieve.[8]
 {¶ 26} Our review of the record does not demonstrate that the trial court failed to consider the objectives set forth in R.C.2929.11. Dawson was convicted of multiple aggravated robbery and felonious assault counts, arising from his using a crack addict to commit robberies for his benefit. Dawson continued to supply crack to Reinke so that he would become more indebted to him. This gave Dawson power and influence over Reinke, which allowed him to compel Reinke to commit the robberies. In the process of committing the robberies, Reinke gravely injured Mr. Schmidt by shooting him in the stomach, and the clerk at West End Lumber went into early labor due to the stress of being robbed. Moreover, as the court noted, Dawson's drug dealing business benefitted from the proceeds received from the robberies.
 {¶ 27} Compared to Dawson, Tiaisha Ogletree and John Rowe each received significantly reduced sentences. However, they entered into plea bargains to reduced charges. Moreover, Tiaisha Ogletree and John Rowe did not exert the influence over Reinke that Dawson did in compelling him to commit the crimes. They also did not furnish Reinke with the weapon to commit these crimes.
 {¶ 28} Although Dawson argues that his co-defendant Rayshawn Ogletree, who was found guilty of murder, received a lesser sentence, we disagree. Ogletree received a sentence of 15 years to life. However, in conjunction with that sentence, he received an underlying sentence of forty-six years for the underlying counts to be served concurrently with the 15 years to life sentence. Therefore, although Dawson contends Ogletree could possibly be released from jail after serving the 15 years on the murder count, Dawson fails to recognize that Ogletree also has to serve the remainder of his 46 year sentence imposed for the underlying crimes. Moreover, whether Ogletree would be released early from his life sentence is pure speculation.
 {¶ 29} Dawson also contends his sentence is inconsistent with other similarly situated offenders. While R.C. 2929.11(B) mandates that a sentence be "consistent with sentences imposed for similar crimes committed by similar offenders," we have held that the goal of the statute is to achieve "consistency" not "uniformity."[9]
 {¶ 30} At sentencing, defense counsel informed the court that his review of aggravated robbery cases indicated that consecutive sentences were only imposed when the case involved "prolonged robberies which involved kidnappings and taking hostages and using people as human shields."[10] He also found that "long consecutive sentences * * * were deemed appropriate for offenders who have done long prison terms before."[11] He contended these factors were nonexistent in Dawson's case.
 {¶ 31} Although defense counsel may have found cases that fit those patterns, this ignores the facts specific to Dawson's case. There is no grid under Ohio law under which identical sentences must be imposed for various classification of offenders.[12] "The task of the appellate court is to examine the available data not to determine if the trial court has imposed a sentence that is in lockstep with others, but whether the sentence is so unusual as to be outside the mainstream of local judicial practice. Although the offense may be similar, distinguishing factors may justify dissimilar treatment."[13]
 {¶ 32} In Dawson's case, people were harmed; Dawson supplied drugs to Reinke so that he became indebted to him and would, therefore, commit the robberies when Dawson instructed him; and, Dawson's drug enterprise profited from the robberies. Dawson also had a prior history for drug offenses for which he served time in prison. Therefore, considering the surrounding facts of the offenses, we do not find the trial court's sentence was disproportional. Accordingly, Dawson's third and fourth assigned errors are overruled.
 Consecutive Sentence Violates Blakely {¶ 33} Dawson argues in his fifth assigned error that his consecutive sentence violates the U.S. Supreme Court's decision in Blakely v. Washington.[14] We agree based on the Ohio Supreme Court's recent decision in State v. Foster.[15]
 {¶ 34} In Foster, the Supreme Court held that several provision of S.B. 2, including R.C. 2929.14(E), which governs the imposition of consecutive sentences, violate Blakely.
Specifically as it pertains to R.C. 2929.14(E), the Court held: "because the total punishment increases through consecutive sentences only after judicial findings beyond those determined by a jury or stipulated to by a defendant, R.C. 2929.14(E)(4) violates principles announced in Blakely."[16] The Court severed R.C. 2929.14(E) from the sentencing statutes based on its finding that Blakely rendered it unconstitutional.
 {¶ 35} As a result, the trial court is no longer obligated to give reasons or findings prior to imposing a consecutive sentence. The Court held that:
"[Cases] pending on direct review must be remanded to trial courts for new sentencing hearings not inconsistent with this opinion. * * *
"Under R.C. 2929.19 as it stands without (B)(2), the defendants are entitled to a new sentencing hearing although the parties may stipulate to the sentencing court acting on the record before it. Courts shall consider those portions of the sentencing code that are unaffected by today's decision and impose any sentence within the appropriate felony range. If an offender is sentenced to multiple prison terms, the court is not barred from requiring those terms to be served consecutively. While the defendants may argue for reductions in their sentences, nothing prevents the state from seeking greater penalties. United States v.DiFrancesco (1980), 449 U.S. 117, 134-136, 101 S.Ct. 426, 66 L.Ed.2d 328."[17]
 {¶ 36} Thus, in accordance with Foster, we reverse and remand Dawson's sentence for a new hearing. In doing so, we note the Ohio Supreme Court clarification in State v.Mathis:[18]
"Although after Foster, the trial court is no longer compelled to make findings and give reasons at the sentencing hearing since R.C. 2929.19(B)(2) has been excised, nevertheless, in exercising its discretion the court must carefully consider the statutes that apply to every felony case. Those include R.C.2929.11, which specifies the purpose of sentencing, and R.C.2929.12, which provides guidance in considering factors relating to the seriousness of the offense and recidivism of the offender. In addition, the sentencing court must be guided by statutes that are specific to the case itself."[19]
 {¶ 37} Accordingly, Dawson's fifth assigned error is sustained.
 Failure to State Reasons Pursuant to R.C. 2929.14(E) {¶ 38} In his sixth assigned error, Dawson contends the trial court erred in imposing consecutive sentences without giving its reasons in support of its findings pursuant to R.C. 2929.14(E).
 {¶ 39} Because of our disposition of the fifth assigned error, this assigned error is moot and need not be addressed.[20]
Convictions affirmed; sentence reversed and remanded for resentencing.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Dyke, A.J., and Calabrese, Jr., J., Concur.
 APPENDIX Assignments of Error
 "I. Appellant's convictions for aggravated robbery are notsupported by sufficient evidence where the State of Ohio failedto prove that the defendant participated in any manner whatsoeverin the incidents."
 "II. Appellant's convictions for the gun specifications arenot supported by sufficient evidence where the state failed topresent evidence that the appellant shared the same mens rea asthe principal offender."
 "III. Mr. Dawson's sentence is unlawful as it is inconsistentwith the sentence received by his codefendants and othersimilarly situated defendants."
 "IV. The trial court failed to make a finding that thedefendant's sentence is consistent with similarly situatedoffenders."
 "V. The imposition of consecutive sentences in the instantcase was done in violation of Mr. Dawson's Sixth Amendment Rightto trial by jury."
 "VI. The trial court erred when it ordered consecutivesentences without furnishing the necessary reasons required byR.C. 2929.14(E)(4) and R.C. 2929.19(B)(2)."
[1] See Appendix.
[2] The jury found Dawson's co-defendant, Rayshawn Ogletree, guilty of one count of murder, one count of aggravated burglary, two counts of aggravated robbery, and one count of engaging in a pattern of corrupt activity. He received a sentence of fifteen years to life for the murder count and a total of forty-six years on the remaining counts, to run concurrently with the murder count.
[3] (1978), 55 Ohio St.2d 261, syllabus.
[4] See, also, State v. Apanovitch (1987), 33 Ohio St.3d 19,23; State v. Davis (1988), 49 Ohio App.3d 109, 113.
[5] (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
[6] See State v. Johnson, 93 Ohio St.3d 240, 2001-Ohio-1336.
[7] State v. Mendoza (2000), 137 Ohio App.3d 336, 342, quoting State v. Stepp (1997), 117 Ohio App.3d 561, 568-569.
[8] State v. Georgakopoulos, Cuyahoga App. No. 81934, 2003-Ohio-4341; State v. Bolton, Cuyahoga App. No. 80263, 2002-Ohio-4571.
[9] State v. Woods, Cuyahoga App. No. 82789, 2004-Ohio-2700;State v. Mercado, Cuyahoga App. No. 84559, 2005-Ohio-3429;State v. Breeden, Cuyahoga App. No. 84663, 2005-Ohio-510;State v. Austin, Cuyahoga App. No. 84142, 2004-Ohio-5736.
[10] Tr. at 957.
[11] Id.
[12] State v. Turner, Cuyahoga App. No. 81449, 2003-Ohio-4933.
[13] State v. Turner, citing, State v. Ryan, 1 Dist. No. C-020283, 2003-Ohio-1188.
[14] (2004), 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed. 2d 403.
[15] ___ Ohio St.3d ___, 2006-Ohio-856.
[16] Id. at ¶ 67.
[17] Id. at ¶ 104-105.
[18] ___ Ohio St.3d ___, 2006-Ohio-855.
[19] Id. at ¶ 38.
[20] App.R. 12(A)(1)(c).