[Cite as *State v. Parrish*, 2012-Ohio-3153.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 97482**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## GLENN A. PARRISH

DEFENDANT-APPELLANT

## JUDGMENT:
## AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-553107

**BEFORE:**   Kilbane, J., Boyle, P.J., and Cooney, J.

**RELEASED AND JOURNALIZED:**   July 12, 2012

**ATTORNEYS FOR APPELLANT**

Robert L. Tobik
Chief Public Defender
Erika B. Cunliffe
Assistant Public Defender
310 Lakeside Avenue
Suite 200
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor
Aaron Brockler
Mary H. McGrath
Assistant County Prosecutors
The Justice Center - 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY EILEEN KILBANE, J.:

{¶1} In this appeal, defendant-appellant, Glenn Parrish, challenges his sentence for two counts of aggravated vehicular homicide; driving under the influence of alcohol, Ohio's "OVI" statute; and aggravated vehicular assault. Defendant asserts that the trial court failed to apply the requirements of the new sentencing law, Amended Substitute House Bill 86, which went into effect on the day he was sentenced. For the reasons set forth below, we affirm.

{¶2} On June 25, 2011, defendant was operating a 1994 Dodge Caravan with passengers Daniel Snead ("Snead"), Brandon Smith ("Smith"), Justin Fort ("Fort"), Louis Fitzpatrick ("Fitzpatrick"), and Justin Merritt ("Merritt"). Defendant's vehicle collided with a van operated by Donald Laster ("Laster"). Snead and Smith died as a result of their injuries, and defendant's other passengers were injured. Laster and his passenger, Charles O. Hill ("Hill"), were also injured.

{¶3} On August 11, 2011, defendant was indicted pursuant to a 16-count indictment. In Counts 1 and 2, he was charged with aggravated vehicular homicide, in violation of R.C. 2903.06(A)(1)(a). These counts also contained furthermore specifications alleging that defendant's license was suspended at the time of the offense and elevating the offense to a first degree felony. In Counts 10 and 11, he was charged

with aggravated vehicular homicide, in violation of R.C. 2903.06(A)(2)(a), with furthermore clauses alleging a prior license suspension. In Counts 3 through 7, defendant was charged with aggravated vehicular assault, in violation of R.C. 2903.08(A)(1), all with furthermore specifications alleging that defendant's license was suspended at the time of the offenses. In Counts 12 through 16, the State charged defendant with aggravated vehicular assault, in violation of R.C. 2903.08(A)(2). These counts all contained furthermore specifications alleging that defendant's license was suspended at the time of the offenses, alleging third degree felony offenses. In Counts 8 and 9, he was charged with OVI, in violation of R.C. 4511.19(A)(1).

{¶4} Defendant subsequently entered into a plea agreement with the State. Under the terms of the plea, the furthermore specifications were deleted from Counts 1 and 2, reducing them to second degree felonies. The court advised defendant that these offenses carried mandatory prison terms of two to eight years. The furthermore specification was also deleted from Count 12, reducing this count to a fourth degree felony, and it was also amended to add the names of defendant's passengers, in addition to Laster and Hill, who were in the other vehicle. On September 1, 2011, defendant pled guilty to these charges and one of the charges of OVI. Defendant was then referred to the county probation department for a presentence investigation.

{¶5} In a sentencing memorandum, defendant stated that Snead and Smith were two of his closest friends and he has extreme remorse for his conduct. He accepted full responsibility for his actions and has no previous criminal record other than traffic

offenses. Various individuals provided letters in support of defendant, attesting to his character and good conduct prior to the accident.

{¶6} The trial court held a lengthy sentencing hearing on September 30, 2011, the effective date of newly enacted R.C. 2929.14( C). *See* Am.Sub.H.B. 86. During these proceedings, the trial court noted that defendant lived with his aunt, and that his father's whereabouts were unknown. Defendant is receiving mental health counseling to cope with the aftermath of his actions, and he is attending Alcoholics Anonymous meetings. The court additionally noted that the driver of the other vehicle involved in the collision expressed his desire that defendant receive probation and substance abuse treatment.

{¶7} The court heard testimony from Cleveland Police Detective Richard Cerny ("Detective Cerny") regarding the crash. Detective Cerny explained that defendant went through a red light on Buckeye Road at Martin Luther King, Jr. Drive, and Laster's vehicle struck defendant's vehicle broadside on the passenger side. Defendant was traveling at about 50 miles per hour, and there was no evidence that he attempted to brake prior to the crash. Defendant immediately took responsibility for his actions and expressed remorse. Detective Cerny went on to say how unusual it was for someone to immediately take responsibility for their actions and be remorseful.

{¶8} Various individuals provided letters in support of defendant, attesting to his character and lifestyle prior to the accident. Merritt informed the court that all of defendant's passengers were drunk and all were at fault. He hoped that defendant could

receive probation. Fort stated that defendant is suffering emotionally from the accident and that any one of the passengers could have been driving. Fitzpatrick explained that the group had been throwing eggs at cars. He stated that the defendant's entire group made a bad mistake, and he asked the court for leniency for defendant.

{¶9} Kristen Hendon, Snead's sister, stated that her brother had just gotten a new job and was excited about his future. His family is struggling with the pain of his loss but asked the court for "as much leniency as possible."

{¶10} Tia Lewis, mother of Smith, testified that she has been devastated since her son's death. She stated that defendant made a bad choice but was remorseful.

{¶11} Laster informed the court that a passenger in defendant's vehicle had thrown an egg at a driver and that the driver proceeded to chase after defendant's van. Following the collision, this driver was still screaming at defendant's group. Laster did not believe that a prison term would be beneficial. Instead, he hoped that defendant would participate in a program to teach others about the dangers of drinking and driving.

{¶12} Darnell Hill, the individual whose vehicle was hit with an egg, submitted a letter to the prosecuting attorney in which he apologized for reacting the way that he did. Darnell Hill indicated that he is praying for the defendant and the others, and he expressed hope for defendant's future.

**{¶13}** Dwayne Reese, a lifelong friend of defendant, stated that defendant has been like a son to him, and he asked the court to give defendant an opportunity to give back to society in memory of his friends rather than spend time in prison.

**{¶14}** Defendant stated that the deceased were like brothers to him, and that he did not have words to express his sorrow and remorse for his actions.

**{¶15}** The trial court then sentenced defendant to two consecutive two-year terms on Count 1 (aggravated vehicular homicide) and Count 2 (aggravated vehicular homicide), to be served concurrently with a one-year term on Count 12 (aggravated vehicular assault), and a six-month term on Count 8 (driving while under the influence). The trial court also imposed a mandatory lifetime license suspension, three years of postrelease control, and a $1,000 fine.

**{¶16}** Defendant now appeals, assigning two errors for our review.

ASSIGNMENT OF ERROR ONE

> The trial court imposed consecutive sentences without making the required
> findings under R.C. 2929.12(C)(4) and thus violated Mr. Parrish's statutory
> and constitutional rights to a sentence consistent with applicable law.

**{¶17}** In reviewing a felony sentence, we take note of R.C. 2953.08(G), which provides:

> (2) The court hearing an appeal under division (A), (B), or (C) of this
> section shall review the record, including the findings underlying the
> sentence or modification given by the sentencing court.
>
> The appellate court may increase, reduce, or otherwise modify a sentence
> that is appealed under this section or may vacate the sentence and remand
> the matter to the sentencing court for resentencing. The appellate court's
> standard for review is not whether the sentencing court abused its

discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law.

{¶18} With regard to the applicable law, R.C. 2929.11(A) provides that:

[A] court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing[,] * * * to protect the public from future crime by the offender and others and to punish the offender. To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both.

{¶19} R.C. 2929.12 provides a nonexhaustive list of factors a trial court must consider when determining the seriousness of the offense and the likelihood that the offender will commit future offenses.

{¶20} In this matter, defendant pled guilty to one count of aggravated vehicular homicide, in violation of R.C. 2903.06(A)(1)(a), in connection with the death of Snead, and one count of aggravated vehicular homicide, in violation of R.C. 2903.06(A)(1)(a), in connection with the death of Smith. These offenses carry a mandatory prison term of between two to eight years, in addition to a lifetime driver's license suspension. *See*

R.C. 2903.06(B).  Defendant also pled guilty to aggravated vehicular assault, in violation of R.C.  2903.08(A)(2)(b), a felony of the fourth degree.  *See* R.C. 2903.08(C).  This offense carried a possible term of six to 18 months of imprisonment.  He also pled guilty to a misdemeanor charge of driving while under the influence of alcohol, in violation of R.C. 4511.19(A)(1)(a), a misdemeanor of the first degree, punishable by not more than six months in jail.  Therefore, defendant faced a possible term of imprisonment of up to eight years for Count 1, eight years for Count 2, 18 months for Count 12, and six months on Count 8.  If the court had ordered all of the time to be served consecutively, defendant faced a maximum term of 18 years of imprisonment.  The four-year term that defendant received is well within the statutory range for the offenses and is substantially less than the total possible maximum term and substantially less than the possible maximum for a single charge of aggravated vehicular homicide.

**{¶21}** As to the imposition of consecutive terms, we note that in accordance with Am.Sub.H.B. No. 86, which became effective on September 30, 2011, fact-finding is required prior to the imposition of consecutive sentences.[1]  *State v. Calliens*, 8th Dist. No. 97034, 2012-Ohio-703, ¶ 28.  Pursuant to newly enacted R.C. 2929.14(C)(4):

---

[1]Under prior case law, construing the pre-*Foster* version of R.C. 2929.14(C), and R.C. 2929.19(B), the trial court was also required to "make a finding that gives its reasons for selecting a consecutive sentence."  *See State v. Comer*, 99 Ohio St.3d 463, 2003-Ohio-4165, 793 N.E.2d 473.  The present version of R.C. 2929.14(C) simply requires findings from the court but does not include the requirement that the court state on the record the findings that give reasons for the sentence.  *Compare* current versions of R.C. 2929.14(C)(4) with the current version of R.C. 2929.14(B)(2)(e) and the current version of R.C. 2929.19.

(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crimes by the offender.

**{¶22}** In *State v. Wilson*, 8th Dist. No. 85598, 2005-Ohio-4285, this court determined that the trial court satisfied all of the requirements of R.C. 2929.14 prior to imposing consecutive sentences, where:

The judge informed the defendant he would impose a sentence "commensurate with the crimes and [defendant's] record, and [defendant's] background, [and] the harm [he] caused to the [victims]." The judge noted

a need to impose a sentence that would "protect the public from future crime" of the defendant. The judge discussed the severity of defendant's crimes and went into lengthy detail and analysis of why defendant's crimes reflected a greater dangerousness to the community compared to crimes of other offenders. The judge noted defendant's failure on parole. The judge found and reasoned "you were out on parole, you have an unenviable history of convictions and crimes of violence, the remorse is minimal, and it would appear to me that you're a highly dangerous individual, highly dangerous to yourself and to society, and that incarceration is necessary to deter you and incapacitate you from future crime."

*Wilson* at ¶ 12.

{¶23} Likewise, in this matter, the trial court held a lengthy hearing in which it heard a considerable amount of evidence and made thoughtful and extensive findings. The court discussed the severity of defendant's crimes and went into lengthy detailed analysis about the need to impose a sentence that would protect the public. The court then informed defendant that it would impose a sentence commensurate with the crimes and defendant's background, and the harm defendant caused to the victims. Specifically, the trial court stated that two people had died and that many people had been injured as the result of defendant's actions. Punishment was deserved and had to be fashioned to reflect that two lives were lost because of defendant's actions. The court also stated that society had been shocked and harmed by the reckless behavior of the defendant. The

court found that defendant had admittedly driven while drunk and caused extreme harm, and that the law has set forth consequences for such conduct.

**{¶24}** In short, the court fully met the requirements of the applicable law, including the requirements of newly enacted R.C. 2929.14(C)(4). The trial court properly concluded that the consecutive sentence is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. The trial court additionally concluded that the course of conduct through which defendant committed the offenses produced a harm that resulted in two deaths and multiple injuries, and the harm from the multiple offenses was so significant that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct. The trial court therefore articulated the appropriate findings consistent with the directives of R.C. 2929.14(C)(4).

**{¶25}** The first assignment of error is without merit.

## ASSIGNMENT OF ERROR TWO

Mr. Parrish's counsel was ineffective for failing to argue that R.C. 2929.14(C)(4) required specific findings at the September 30, 2011, sentencing hearing.

{¶26} For his second assignment of error, defendant argues that his trial counsel was ineffective for failing to argue that specific findings were required before consecutive sentences could be imposed.

{¶27} To establish a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

{¶28} To show error, the defendant must overcome the strong presumption that licensed attorneys are competent and that the challenged action is the product of sound trial strategy and falls within the wide range of reasonable professional assistance. *Strickland* at 690-691. Because judicial scrutiny of counsel's performance is highly deferential, reviewing courts must refrain from second-guessing the strategic decisions of trial counsel. *Id.* To show resulting prejudice, the defendant must establish a reasonable probability that, but for counsel's unprofessional conduct, the result of the proceedings would have been different. *Id.*

{¶29} Here, the record indicates that defendant's attorney informed the trial court as follows:

> [A]s I understand the [new] statute, it has a preference towards minimum sentence for someone who has no previous prison sentence or any prior record, a preference away from consecutive sentence. But I don't have a good handle on how much discretion there is or how much of a fact finding is required. * * *.
>
> * * * In this particular case, because of the unique nature of it and the fact that even the victims' famil[ies] and all the people involved are sympathetic

to the situation and don't want him to do any time in some instances and a little in others, a situation we rarely see, I would ask you to consider granting him the minimum two year sentence and letting the rest of the sentence be concurrent.

**{¶30}** In this matter, the record clearly indicates that the court and the attorneys were well aware that the new statute took effect on the date of sentencing and that fact-finding was required in order for consecutive sentences to be imposed. (Tr. 89.)

**{¶31}** Further, the trial counsel filed a detailed sentencing memorandum that included numerous letters and emails from 11 individuals reiterating that defendant was 23 years old, a graduate of Shaker Heights High School, had no criminal history, was employed, and had attended Cuyahoga Community College. From this, and from the remarks of defense counsel, we conclude that counsel strategically determined to emphasize his argument for a minimum sentence, rather than to outline what the court should do in order to impose consecutive terms. Therefore, we conclude that trial counsel did not err. In any event, we have concluded that the trial court complied with the requirements of the newly enacted statute, so defendant incurred no prejudice in this matter.

**{¶32}** The second assignment of error is without merit.

**{¶33}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, JUDGE

MARY J. BOYLE, P.J., and
COLLEEN CONWAY COONEY, J., CONCUR