[Cite as *State v. Pruitt*, 2012-Ohio-5418.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 98080

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## DENVER A. PRUITT

DEFENDANT-APPELLANT

## JUDGMENT:
## AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-552756

**BEFORE:** E. Gallagher, J., Boyle, P.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** November 21, 2012

**ATTORNEY FOR APPELLANT**

Stephen L. Miles
20800 Center Ridge Road
Suite 211
Rocky River, Ohio   44116


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By:    Nathaniel Tosi
Assistant County Prosecutor
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio   44113

EILEEN A. GALLAGHER, J.:

{¶1} Denver Pruitt appeals his conviction and the sentence entered in the Cuyahoga County Court of Common Pleas. Pruitt argues that the trial court erred in admitting phone-call recordings that were not authenticated, that his convictions were against the manifest weight of the evidence and that his sentence was improperly imposed. Finding no merit to the instant appeal, we affirm the judgment of the trial court.

{¶2} On July 22, 2011, Denver Pruitt and Eugene Nelson went to Advance Iron and Metal located at 7007 Quincy Road in Cleveland, Ohio, to sell a small amount of scrap metal. Pruitt and Nelson spoke with Gary Gross, the owner of the yard. Gross later testified that he did not know these two men, but stated that he was immediately suspicious because they arrived to sell six to seven pounds of metal, which was worth less than one dollar. Gross stated that he requires valid identification from anyone selling scrap metal and that he carries a .357 magnum revolver on his person at all times.

{¶3} Gross testified that he began walking towards his office but maintained visual contact with Pruitt and Nelson. Gross stated that as he used a remote buzzer to unlock the office door, Pruitt and Nelson pushed both him and employee, Oscar Woods, into the office. Gross testified that Pruitt, whom he identified by clothing and at a later cold-stand line up, held a gun up to his head. Gross tried to push the gun away while simultaneously pulling out his own gun from his front pants pocket. During the struggle, Pruitt's gun discharged, grazing the side of Gross' stomach and leaving a hole

in his shirt.  Gross testified that Pruitt backed out of the doorway and fled.  Gross stated that he shot towards the bullet-proof glass to make sure Pruitt left and did not return.

{¶4}  Gross stated that as Pruitt fled, Nelson jumped on top of him and the two began fighting.  Gross discharged his weapon two more times, striking Nelson in the elbow and back.  Nelson fled the area and Gross, Woods and a third worker, Donny Mitchell, chased after Nelson and Pruitt.  Gross stated that he could see Nelson limping down the street and could also see Pruitt two blocks away, at East 69th Street and Quincy Avenue.  While Gross, Woods and Mitchell were standing on the sidewalk, Pruitt raised his handgun and fired at the three males.

{¶5}  In response to the gunshots, numerous witnesses contacted 911.  Police officers responded and arrested Nelson as he was heading towards his vehicle and the officers transported Nelson for treatment of his gunshot wounds.  Officers also arrested Pruitt, who attempted to identify himself as a worker at a nearby warehouse.  Officers brought Pruitt back to Advance Iron and Metal where Gross and Woods identified him as the shooter.

{¶6}  On August 1, 2011, a Cuyahoga County Grand Jury indicted Pruitt  on four counts of aggravated robbery with one- and three-year firearm specifications, one count of kidnapping with one- and three-year firearm specifications, five counts of felonious assault with one- and three-year firearm specifications and one count of having weapons while under disability.  Pruitt elected to proceed to a jury trial.  During trial, the state presented the testimony of victims Gary Gross, Oscar Woods and Donny

Mitchell, the responding and arresting officers, recordings of the 911 calls regarding the incident, a recorded Cuyahoga County jail telephone conversation between Pruitt and an unknown female and the testimony of codefendant Nelson. Gross, Woods, Mitchell and Nelson all identified Pruitt as the man who shot at the victims during the robbery at Advanced Iron and Metal. Pruitt presented no witness testimony but argued that Nelson was the shooter. Prior to submitting the case to the jury, the state dismissed Count 9, one of the five charges of felonious assault; the court renumbered the remaining counts accordingly.

{¶7} On February 6, 2012, the jury returned a verdict of guilty to aggravated robbery with one- and three-year firearm specifications as charged in Counts 1-4, kidnapping with one- and three-year firearm specifications as charged in Count 5, felonious assault with one- and three-year firearm specifications as charged in Counts 6-9 and having weapons while under disability as charged in Count 10. The state elected to proceed on Counts 1 and 8 and the court merged all firearm specifications as well as Counts 1-7 and 9 for purposes of sentencing. On February 28, 2012, the trial court sentenced Pruitt to nine years on the charge of aggravated robbery, three years on the firearm specification, four years on the charge of felonious assault and one year on the charge of having weapons while under disability. The court ordered all sentences to run consecutive to one another except for the one-year sentence for the charge of having weapons while under disability, for a total prison term of 16 years.

{¶8} Pruitt appeals, raising the following four assignments of error for review.

Assignment of Error I

The trial court erred by admitting into evidence recordings of jailhouse phone calls.

Assignment of Error II

The convictions for Aggravated robbery, Felonious assault and Having A Weapon While Under Disability were against the manifest weight of the evidence.

Assignment of Error III

The trial court erred by sentencing the appellant to a disproportionate sentence compared to similarly situated offenders.

Assignment of Error IV

The trial court erred by sentencing the appellant to consecutive sentences.

{¶9} In Pruitt's first assignment of error, he argues that the trial court erred in admitting the recording of a jailhouse phone call. In the state's case-in-chief, the state played a recording of a jailhouse telephone conversation between a female and the defendant discussing the female's attempts to prevent a victim witness from testifying. Pruitt argues that the state never authenticated the phone call and thus, it was an error for the court to play the recording. Pruitt's argument lacks merit.

{¶10} "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." *State v. Hamilton*, 8th Dist. No. 86520, 2006-Ohio-1949.

The applicable standard of review for questions regarding the admission of evidence is an abuse of discretion. *State v. Soke* (1995), 105 Ohio App.3d 226, 249, 663 N.E.2d 986. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 404 N.E.2d 144. *Hamilton.*

**{¶11}** Evid.R. 901 governs authentication and provides a liberal standard for the authentication of telephone calls. *State v. Teague*, 8th Dist. No. 90801, 2009-Ohio-129. Pursuant to Evid.R. 901(A), the requirement of authentication for evidence to be admissible "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." "Telephone conversations are admitted where the identity of the parties is satisfactorily explained." *State v. Williams*, 64 Ohio App.2d 271, 274, 413 N.E.2d 1212 (8th Dist.1979).

> Testimony as to a telephone call is admissible where there is a reasonable showing, through testimony or other evidence, that the witness placed or received a call as alleged, plus some indication of the identity of the person spoken to. There is no fixed identification requirement for all calls. * * * "Each case has its own set of facts." (Citations omitted.)

*State v. Vrona*, 47 Ohio App.3d 145, 149, 547 N.E.2d 1189 (9th Dist.1988).

> Circumstantial evidence, as well as direct, may be used to show authenticity. Moreover, the threshold standard for authenticating evidence pursuant to Evid.R. 901(A) is low, and "does not require conclusive proof of authenticity, but only sufficient foundational evidence for the trier of fact to conclude that * * * [the evidence] is what its proponent claims it to be." (Internal citations omitted.)

*Teague*.

**{¶12}** In the present case, Sergeant Phillip Christopher testified that jail phone calls are made and recorded using a system called Global Telelink. Sgt. Christopher stated that when an inmate makes either a collect call or a prepaid call, they pick up one of the telephone receivers inside the housing unit, are directed to input their inmate PIN, a unique number to each inmate, and then dial the phone number to which they are

placing their call. Sgt. Christopher stated that this information is recorded by the Global Telelink system. Sgt. Christopher further explained that the system generates a call log that details the number called, the PIN used and the date and time. He then identified state's exhibit No. 10 as a call log associated with PIN 23537, which was assigned to Pruitt, and then identified and associated the recorded jail call with state's exhibit No. 10. On cross-examination, Sgt. Christopher admitted that inmates have been known to share their PIN numbers with other inmates.

{¶13} Although Sgt. Christopher admitted that inmates do share their PIN numbers, the content of the recording confirms the identity of the caller. In the recording, the caller is speaking to a female he identifies as his girlfriend. This female states that she went to the scrapyard to offer money to get a witness not to testify. The female stated that the witness was uncooperative even after she offered money because the individuals had tried to kill him. This conversation mirrors the facts of the present case. Pruitt stops short of claiming that it was not his voice on the recording; he merely argues that the state failed to authenticate the recording and, thus, the court committed error in admitting it into evidence.

{¶14} The testimonial evidence from Sgt. Christopher as well as the content of the recording itself is sufficient to conclude that it was Pruitt's voice captured by the recording. The trial court did not abuse its discretion in admitting the recorded conversation.

{¶15} Pruitt's first assignment of error is overruled.

**{¶16}** In his second assignment of error, Pruitt argues that his convictions for aggravated robbery, felonious assault and having weapons while under disability are against the manifest weight of the evidence.[1]  We disagree.

> **{¶17}** In evaluating a challenge based on manifest weight of the evidence, a court sits as the thirteenth juror, and intrudes its judgment into proceedings that it finds to be fatally flawed through misrepresentation or misapplication of the evidence by a jury that has "lost its way." *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541.  As the Ohio Supreme Court declared:    Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.  It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them.  Weight is not a question of mathematics, but depends on its effect in inducing belief."
>
> * * * The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.  The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.  (Internal citations omitted.)

*Id.* at 387.

**{¶18}** This court is mindful that weight of the evidence and the credibility of witnesses are primarily for the trier of fact and a reviewing court must not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that

---

[1] Pruitt does not allege that his conviction for kidnapping or that his conviction for the attached one- and three-year firearm specifications on the multiple charges of aggravated robbery and felonious assault are against the manifest weight of the evidence.  Our analysis of Pruitt's second assignment of

the state has proven the offense beyond a reasonable doubt.  *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), at paragraphs one and two of the syllabus.  The goal of the reviewing court is to determine whether a new trial is mandated.  A reviewing court should only grant a new trial in the "exceptional case in which the evidence weighs heavily against a conviction."  (Internal citation omitted.)  *State v. Lindsey*, 87 Ohio St.3d 479, 2000-Ohio-465, 721 N.E.2d 995.

{¶19} In support of his argument, Pruitt claims the following: that it was his codefendant Eugene Nelson's idea to commit the robbery and that Nelson possessed the gun at the scrapyard; that Nelson's credibility is lacking because of his lengthy prior record; that the investigating officers found no bullet casings in the office of the scrapyard, nor did they recover a firearm or gunshot residue from Pruitt; and that the testimony of victims Gross, Woods and Mitchell was conflicting.

{¶20} In reviewing the entire record, we cannot say that the trier of fact lost its way in finding Pruitt guilty of four counts of aggravated robbery, four counts of felonious assault and one count of having weapons under disability.  In addition to other witnesses, the state presented the testimony of Gross, Woods, Mitchell and Eugene Nelson, who were on-site when Pruitt committed these crimes.  The witnesses all identified Pruitt as the individual holding the gun as well as the person who shot at them down Quincy Avenue.  Each witness described Pruitt's clothing on the day of the shooting and each witness identified Pruitt in court as the man who committed the

---

error will therefore be limited.

crimes. Additionally, the state presented the recordings of 911 calls from anonymous callers. The callers described the gunman's clothing, which matched the description given by Gross, Woods, Mitchell and Nelson.

{¶21} The state also presented testimony from investigators who explained that gunshot residue is not always found on a person and the lack of residue does not mean that the person did not fire a weapon.

{¶22} Although Pruitt argues that his version of events should have been relied upon by the trial court, the trier of fact is in the best position to weigh the evidence and the credibility of witnesses. As the reviewing court, we find that the trier of fact could reasonably conclude from the substantial evidence presented by the state that the state has proven the offenses beyond a reasonable doubt. Accordingly, we cannot find that the trier of fact lost its way and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered.

{¶23} Pruitt's second assignment of error is overruled.

{¶24} In his third and fourth assignments of error, Pruitt argues the trial court erred when it sentenced him to a 16-year term of imprisonment. Specifically, Pruitt argues that his sentence is disproportionate to other similarly situated offenders and that the trial court failed to make the required findings to sentence him to a consecutive term. Pruitt's arguments lack merit.

{¶25} Pruitt argues that his sentence is disproportionate because while he received a 16-year term of imprisonment, his codefendant received only a six-year sentence. We

disagree.

**{¶26}** R.C. 2929.11(B) states that a felony sentence must be "consistent with sentences imposed for similar crimes committed by similar offenders." However, the goal of felony sentencing is to achieve "consistency" not "uniformity." *See State v. Marshall*, 8th Dist. No. 89551, 2008-Ohio-1632; *State v. Klepatzki*, 8th Dist. No. 81676, 2003-Ohio-1529; *State v. Richards*, 8th Dist. No. 83696, 2004-Ohio-4633; *State v. Harris*, 8th Dist. No. 83288, 2004-Ohio-2854; *State v. Dawson*, 8th Dist. No. 86417, 2006-Ohio-1083 (although an offense may be similar, distinguishing factors may justify dissimilar treatment); *State v. Nelson*, 11th Dist. No. 2008-L-072, 2008-Ohio-5535 (no requirement that codefendants receive equal sentences).

**{¶27}** Although both Pruitt and Nelson were initially indicted on identical charges, Nelson pleaded guilty to only one count of aggravated robbery with a one-year firearm specification. The court dismissed the remaining charges against Nelson. Pruitt, on the other hand, was found guilty of four counts of aggravated robbery with one- and three-year firearm specifications, one count of kidnapping with one- and three-year firearm specifications, four counts of felonious assault with one- and three-year firearm specifications and one count of having weapons while under disability. Additionally, the state's witnesses all identified Pruitt, not Nelson, as the individual holding and firing a weapon on July 22, 2011.

**{¶28}** As discussed in detail below, the trial court followed the sentencing guidelines and considered all relevant factors when sentencing Pruitt.

**{¶29}** This court recently analyzed a trial court's requirements for imposing consecutive sentences and found as follows:

House Bill 86, which became effective on September 30, 2011, revived the language provided in former R.C. 2929.14(E) and moved it to R.C. 2929.14(C)(4). The revisions to the felony sentencing statutes under H.B. 86 now require a trial court to make specific findings when imposing consecutive sentences. R.C. 2929.14(C)(4) provides, in relevant part: If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

"(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under postrelease control for a prior offense.

"(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

"(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."

In Section 11 of House Bill 86, the legislature explained that in amending former R.C. 2929.14(E)(4), it intended "to simultaneously repeal and revive the amended language in those divisions that was invalidated and severed by the Ohio Supreme Court's decision in *State v. Foster* (2006), 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470." The General Assembly further explained that the amended language in those divisions "is subject to reenactment under the United States Supreme Court's decision in *Oregon v. Ice* (2009), 555 U.S. 160, 129 S. Ct. 711, 172 L. Ed. 2d 517, and the Ohio Supreme Court's decision in *State v. Hodge* (2010), 128 Ohio St. 3d 1, 941 N.E.2d 768, Slip Opinion No. 2010 Ohio 6320."

Thus, it is the legislature's intent that courts interpret the language in R.C. 2929.14(C)(4) in the same manner as the courts did prior to *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470.

Under R.C. 2929.14(C)(4), the trial court must state its findings in support of consecutive sentences on the record at the sentencing hearing. *State v. Comer*, 99 Ohio St.3d 463, 2003-Ohio-4165, 793 N.E.2d 473, paragraph one of the syllabus. However, it is not required to recite any "magic" or "talismanic" words when imposing consecutive sentences provided it is "clear from the record that the trial court engaged in the appropriate analysis." *State v. Murrin*, 8th Dist. No. 83714, 2004 Ohio 3962, ¶12. An appellate court may only sustain an assignment of error challenging the imposition of consecutive sentences under R.C. 2929.14 if the appellant shows that the judgment was clearly and convincingly contrary to law. R.C. 2953.08(G).

*State v. Davis*, 8th Dist. Nos. 97689, 97691 and 97692, 2012-Ohio-3951.

{¶30} The trial court articulated the appropriate findings required by R.C. 2929.14(C)(4), both on the record at the sentencing hearing and in the judgment entry of conviction and sentence. At the sentencing hearing, the court recounted Pruitt's extensive criminal history that dated back to juvenile adjudications beginning in 1991. The court also commented on the harm he caused his victims.

{¶31} Our review of the transcript reveals that the trial court considered not only the impact of Pruitt's actions on the victims of the present case, but also the fact that prior attempts at rehabilitation had been unsuccessful. The court found that the seriousness of the crimes coupled with Pruitt's failure to be rehabilitated required a longer term of incarceration to punish him and to protect the public from future crime. *See also Davis*; *State v. Parrish*, 8th Dist. No. 97482, 2012-Ohio-3153.

{¶32} We find the trial court made the necessary findings to impose consecutive

sentences.

**{¶33}** Pruitt's third and fourth assignments of error are overruled.

**{¶34}** The judgment of the trial court is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

 

_____

EILEEN A. GALLAGHER, JUDGE

MARY J. BOYLE, P.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR